870 A.2d 229

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Charles M. JAMES, III.**

**Misc. AG No. 1, Sept. Term, 2004.**

Court of Appeals of Maryland.

March 16, 2005.

638

640

Melvin Hirshman, Bar Counsel, Gail D. Kessler, Asst. Bar Counsel for Atty. Grievance Com'n, for petitioner.

Charles M. James, III, Cheverly, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

The Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting through Bar Counsel and

pursuant to Maryland Rule 16–751(a),[1] filed a petition for disciplinary or remedial action against respondent, Charles M. James, III, Esquire, on March 15, 2004, after revoking a Conditional Diversion Agreement[2] ("CDA") with respondent. The Petition alleged that James, who was admitted to the Bar of this Court on January 4, 1993, violated several of the Maryland Rules of Professional Conduct ("MRPC"), specifically, 1.1(Competence),[3] 1.3 (Diligence),[4] 1.4 (Communication),[5]

---

**1.** Maryland Rule 16–751(a) provides: "Commencement of disciplinary or remedial action. (1) Upon approval or direction of [the Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

**2.** Maryland Rule 16–736 provides in part:

(a) When Appropriate. Upon completing an investigation, Bar Counsel may agree to a Conditional Diversion Agreement if Bar Counsel concludes that:

(1) the attorney committed professional misconduct or is incapacitated;

(2) the professional misconduct or incapacity was not the result of any wilful or dishonest conduct and did not involve conduct that could be the basis for an immediate Petition for Disciplinary or Remedial Action pursuant to Rules 16–771, 16–773, or 16–774;

(3) the cause or basis of the professional misconduct or incapacity is subject to remediation or resolution through alternative programs or mechanisms, including (A) medical, psychological, or other professional treatment, counseling, or assistance, (B) appropriate educational courses or programs, (C) mentoring or monitoring services, or (D) dispute resolution programs; and

(4) the public interest and the welfare of the attorney's clients and prospective clients will not be harmed if, instead of the matter proceeding immediately with a disciplinary or remedial proceeding, the attorney agrees to and complies with specific measures that, if pursued, will remedy the immediate problem and likely prevent any recurrence of it.

**3.** Rule 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**4.** Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

**5.** Rule 1.4 provides:

1.15 (Safekeeping Property),[6] 8.1(b) (Bar admission and disciplinary matters),[7] and 8.4(a), (c) and (d) (Misconduct).[8] Viola-

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**6.** Rule 1.15, in relevant part, provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

**7.** Rule 8.1(b) provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**8.** Rule 8.4, in relevant part, provides that:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . .

tions of Maryland Rules 16–604 (Trust Account Deposits),[9] 16–607 (Commingling of Funds),[10] 16–609 (Prohibited transactions),[11] and Maryland Code (2000, 2004 Repl.Vol.), Sections

---

**9.** Rule 16–604 provides:

Except as otherwise permitted by rule or other law, all funds, including cash received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney that is made payable solely to a client or third person and is transmitted directly to the client or third person.

**10.** Rule 16–607 provides:

a. General Prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be deposited by section b of this Rule.

b. Exceptions. 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

**11.** Maryland Rule 16–609 provides:

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

10–304(a),[12] 10–306,[13] and 10–307[14] of the Business Occupations and Professions Article.

In accordance with Maryland Rules 16–752(a) and 16–757(c),[15] we referred the petition to Judge Dwight D. Jackson of the Circuit Court for Prince George's County for an evidentiary hearing and to make findings of fact and conclusions of law. On September 20, 2004, Judge Jackson held a hearing and on November 8, 2004, issued Findings of Fact and Conclusions of Law, in which he found, by clear and convincing evidence, that James violated MRPC Rules 1.1, 1.3, 1.4, 1.15(a), 8.1(b) and 8.4(a)(c) and (d), Maryland Rules 16–604, 16–607, and 16–609, and Sections 10–304 and 10–306 of the Business Occupations and Professions Article.

---

**12.** Section 10–304(a) of the Business Occupations and Professions Article provides:

> General Requirement. Except as provided in subsection (b) of this section, a lawyer expeditiously shall deposit trust money into an attorney trust account.

**13.** Section 10–306 of the Business Occupations and Professions Article provides:

> Misuse of trust money. A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

**14.** Section 10–307 of the Business Occupations and Professions Article provides:

> Disciplinary action. A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide.

**15.** Maryland Rule 16–752(a) states:

> (a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

> Maryland Rule 16–757(c) states in pertinent part: "The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law...."

Petitioner recommends disbarment and took no substantive exceptions to the Findings of Fact and Conclusions of Law, merely asking that the $8.39 amount regarding escrow check number 1074 be amended to $10.00 to reflect the greater amount that Respondent admitted he gave to Ms. Smith. We will correct the findings to reflect this change.

On December 7, 2004, the same day Petitioner submitted the one exception and recommendation for sanction, Respondent filed several exceptions, one of which was the same as that filed by Bar Counsel to which we already have acceded. With respect to another exception, Respondent requested that the case be remanded for another evidentiary hearing so that the Circuit Court could consider various issues, a request to which we do not accede. Moreover, we conclude that the appropriate sanction is disbarment.

Judge Jackson's Findings of Fact and Conclusions of Law follow:

## BACKGROUND

"On December 7, 2001, a complaint was filed against Charles M. James, III for allegedly violating several rules of professional conduct. Upon consideration of the complaint, Mr. James, hereinafter called the 'Respondent,' and the Attorney Grievance Commission of Maryland via Bar Counsel, hereinafter called the 'Petitioner,' entered into a Conditional Diversion Agreement, pursuant to Maryland Rule 16–736, on November 18, 2002. On February 20, 2004, the Petitioner, having found Respondent to be in material default, revoked the Agreement. By Order dated March 17, 2004, the Court of Appeals transmitted this matter to this Court to hear the charges contained in the pleadings in accordance with Maryland Rule 16–757, *et seq.* On March 22, 2004, the Petitioner filed a Petition for Disciplinary or Remedial Action against the Respondent. The matter came for hearing before this Court on September 20, 2004."

"At the outset of the hearing, Petitioner pursued its Motion for Sanction, alleging that on May 29, 2004, the

Respondent was personally served with Petitioner's Interrogatories, Requests for Production of Documents and Request for Admission of Facts and Genuineness of Documents but failed to submit responses thereto by June 29, 2004, which was 30 days after service and 15 days after Respondent filed his Answer on June 14, 2004. According to this Court's scheduling order dated July 26, 2004, all discovery was to be completed by August 11, 2004. The Respondent submitted Answers to Interrogatories, Requests for Production of Documents and Requests for Admission of Facts and Genuineness of Documents on August 31, 2004. The Court found Respondent's responses to discovery to be untimely and non-responsive. The Court, therefore, granted Petitioner's Motion for Sanctions and foreclosed the Respondent from putting on any evidence that was requested in the Petitioner's Interrogatories and Requests for Production of Documents. As a result, Petitioner's Requests for Admission of Facts and Genuineness of Documents were admitted, pursuant to Rule 2–424(b), due to the Respondent's failure to respond within 30 days."

### FINDINGS OF FACT SUPPORTING
### COMPLAINT NO. 2002–175–17–9

"Petitioner alleges that the Respondent violated Maryland Rule of Professional Conduct 1.1, 1.15(a), 8.4(a)(d), Rules 16–607 and 16–609 and Business Occupations and Professions Article §§ 10–306 and 10–307 by his misappropriation and commingling of trust money. The Court makes the following Findings of Fact, finding that they are supported by clear and convincing evidence:

'On November 18, 2002, Respondent and Petitioner entered into a Conditional Diversion Agreement; however, on February 20, 2004 that Agreement was revoked. In February of 2001, the Respondent handled a claim for Sheila Smith. On or about February 20, 2001, the proceeds of an arbitration award in the amount of $7,500.00 were forwarded to the Respondent on behalf of Ms. Smith. The Respondent deposited Ms. Smith's $7,500.00 award into his attor-

ney escrow account held at Chevy Chase Bank. On or about May 17, 2001, the Respondent wrote escrow Check No. 1074 to Ms. Smith in the amount of $1,222.47,[16] which was [$10.00] more than Ms. Smith was entitled to."

"The Respondent's escrow Check No. 1074 caused an overdraft on his escrow account in the amount of [$10.00]. Thereafter, Chevy Chase bank assessed a $30.00 non-sufficient funds charge on the Respondent's escrow account. On June 18, 2001, the Respondent's escrow account had a negative running balance of $38.39."

"On June 19, 2001, the Respondent deposited $8,000.00 into his escrow account on behalf of a personal injury client, Catherine A. Davis. When Respondent deposited Ms. Davis' $8,000.00 into his escrow account, his running balance fell to $7,961.61. The Respondent was to maintain in escrow Ms. Davis's net proceeds of $1,774.75; however, he fell below that amount on July 18, 2001, August 3, 2001 and August 6, 2001. Three of the Respondent's Chevy Chase escrow checks were presented to the bank on April 22, 2002. All three checks caused an overdraft in a combined total amount of $70."

"In January of 2000, the Respondent started using his attorney escrow account for personal and business matters. Escrow Check No. 1063, dated January 10, 2000, was written to Directv, a personal expense. The Respondent testified that during 1999 he and his wife, who is also an attorney, had several discussions about depositing client checks into their personal account and that based on their discussions, the Respondent stopped using the personal account and started using his escrow account for business and personal matters."

---

16. According to the Attorney Trust Account Analyzer Transaction Database sheet, the Respondent is shown having a running balance of $1,214.08 on June 14, 2001, which includes interest of .63 cents earned and posted on that same date. No other transaction were made prior to Check No. 1074, except for a fee of $30.00 for insufficient funds.

## CONCLUSIONS OF LAW FOR COMPLAINT
### NO. 2002–175–17–9

"The Court finds that the Respondent violated all the Rules of Professional Conduct charged by the Petitioner in the Petition for Disciplinary or Remedial Action. The Respondent mishandled Ms. Davis' $8,000.00 settlement in violation of Rule 1.1 by not maintaining intact the $8,000.00 when he deposited the money into his escrow account.[17] When Ms. Davis' funds were deposited into the escrow account the Respondent's account balance fell to $7,961.61 due to having a negative balance of $38.39. Further the Respondent failed to maintain intact Ms. Davis' net proceeds of $1,774.75. On three different occasions the escrow account balance fell below the $1,774.75 amount due to Ms. Davis."

"The Court also finds that the Respondent violated Maryland Rule of Professional Conduct 1.15(a), Maryland Rule 16–609 and Business Occupations and Professions Article § 10–306 by not maintaining Ms. Davis' $8,000.00 settlement in the escrow account when it was deposited and later by not maintaining intact Ms. Davis' net proceeds of $1,774.75. The Respondent's escrow account fell below $1,774.75 on July 18, 2001, August 1, 2001 and August 6, 2001. The Respondent failed to keep Ms. Davis' proceeds of $1,775.75 intact until she cashed her settlement check on August 10, 2001. Further, three escrow checks were presented to the bank on April 22, 2002, and all three checks caused an overdraft in a combined total of $70.00."

"The Court further finds that Respondent has been using his escrow account for personal and business matters since January 10, 2000 in violation of Maryland Rule of Professional Conduct 1.15(a) and Rule 16–607. The Respondent's mishandling of his escrow account and his failure to keep

---

17. Rule 1.1 states that "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Ms. Davis' monies intact until disbursed is prejudicial to the administration of justice in violation of Rule 8.4(d)."

### FINDINGS OF FACT SUPPORTING COMPLAINT NO. 2004–101–17–9

"In the complaint of Fazlur R. Kazim, Petitioner alleges that the Respondent violated Rules 1.1, 1.3, 1.4, 1.15(a), 8.1(b) and 8.4(a)(c)(d) of the Maryland Rules of Professional Conduct, Maryland Rule 16–604 and 16–609 and Business Occupations and Professions Article §§ 10–304 and 10–306 in connection with his representation of Mr. Kazim. The Court makes the following Findings of Fact, finding that they are supported by clear and convincing evidence:

'In December of 2002, Mr. Kazim retained the Respondent to investigate and prosecute a civil action against attorney Clark U. Fleckinger, II for alleged damages resulting from an affair he had with Mr. Kazim's wife, which led to a divorce. At the initial meeting with the Respondent, Mr. Kazim signed a retainer agreement and gave the Respondent a $1,500 check representing a $1,000 nonrefundable engagement fee and $500 retainer and/or investigative fee. Upon receipt of Mr. Kazim's $1,500 check, the Respondent cashed the check and made two cash deposits into his operating account totaling $1,476.30. The Respondent never deposited Mr. Kazim's $500 into the escrow account.' "

"Throughout the representation the Respondent failed to communicate with Mr. Kazim. Mr. Kazim sent the Respondent five (5) e-mails and called the Respondent numerous times to no avail. The Respondent never responded to Mr. Kazim's e-mails and telephone calls. The Respondent never sent Mr. Kazim any written communications throughout the representation."

"Marc O. Fielder, Bar Counsel Investigator, interviewed the Respondent, who stated that Mr. Kazim had retained him because he suffered from a physical disability, which was rooted in the emotional distress he suffered while going through his divorce. The Respondent informed Mr. Fiedler

that he was looking at several causes of action to pursue on behalf of Mr. Kazim including intentional interference of the marital contract, intentional infliction of emotional distress, possible negligence and adultery. Originally, the Respondent considered filing a cause of action against Mr. Fleckinger and Mr. Grozbean, who had represented Mr. Kazim' s wife in the divorce proceeding. The Respondent, however, determined early on that there was no cause of action against Mr. Grozbean. The Respondent stated to Mr. Fiedler that he was proceeding against Mr. Fleckinger because Mr. Fleckinger had had an affair with Mr. Kazim' s wife. The Respondent informed Mr. Fiedler that he had not been terminated from the representation and was waiting for additional medical records from Mr. Kazim. Mr. Kazim testified that the Respondent never requested additional medical records than what was initially provided."

"Throughout the representation the Respondent never advised Mr. Kazim that he did not have a cause of action against Mr. Fleckinger. Further, the Respondent never advised Mr. Kazim that nothing further would be done on his matter unless additional medical records were provided."

"By letter dated July 9, 2003, Petitioner requested the Respondent to submit a written response to Mr. Kazim's complaint. Although the Respondent received Petitioner's letter of July 9, 2003, he did not respond to that letter. Petitioner sent the Respondent a second letter dated July 30, 2003 by certified mail, return receipt requested, requesting a written response to Mr. Kazim's complaint within ten days. Although the Respondent received Petitioner's second letter of July 30, 2003, the Respondent did not respond within ten days. Petitioner sent the Respondent a third letter dated September 11, 2003 by certified mail, return receipt requested, requesting a written response to Mr. Kazim's complaint within seven days. Although the Respondent received Petitioner's third letter of September 11, 2003, the Respondent did not respond within seven days. Thereafter, the Petitioner sent the Respondent a fourth letter dated September 24, 2003 by certified mail, return

receipt requested, requesting a written response to Mr. Kazim's complaint within seven days. Although the Respondent received Petitioner's fourth and final letter dated September 24, 2003, the Respondent did not respond within seven days. The Respondent never submitted a written response to Petitioner's letters."

### CONCLUSIONS OF LAW FOR COMPLAINT NO. 2004–101–17–9

"The Court finds that the Respondent violated all the Rules of Professional Conduct alleged by the Petitioner. Respondent incompetently represented Mr. Kazim in violation of Rule 1.1 by not exhibiting the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. The Respondent claimed he was pursuing a cause of action against Mr. Fleckinger for having an affair with Mr. Kazim's ex-wife. In Maryland, it has long been recognized that

> [a]t common law, [an] action for criminal conversation provided different benefits to and imposed different burdens upon men and women. Only a man could sue or be sued for criminal conversation. These facts remain unchanged under the common law as it exists in Maryland today. A man has a cause of action for criminal conversation, but a woman does not. Moreover, a man who engages in an act of sexual intercourse with another man's wife is civilly liable for damages, but a woman who engages in a similar activity with another woman's husband is not. Thus, Maryland's law provides different benefits for and imposes different burdens upon its citizens based solely upon their sex. Such a result violates the [Equal Rights Amendment]. Any previous implicit approval by this Court of the action for criminal conversation is eradicated by the existence of the [Equal Rights Amendment]. The common law cause of action for criminal conversation is a vestige of the past. It cannot be reconciled with our commitment to equality of the sexes. We now hold that in Maryland the cause of action for

criminal conversation is unconstitutional and is no longer viable.

*Kline v. Ansell,* 287 Md. 585, 592–593, 414 A.2d 929 (1980); *see also Doe v. Doe,* 358 Md. 113, 747 A.2d 617 (2000) (Restating that criminal conversation had been abolished).

Therefore, there was no cause of action against Mr. Fleckinger. If the Respondent had done the minimal amount of research he would have discovered that there could not have been any cause of action for criminal conversation and would not have proceeded with the case. Thus, the Court finds that Respondent's failure to act with reasonable diligence in notifying Mr. Kazim that there was no cause of action was in violation of Maryland Rule of Professional Conduct 1.3. The Court also finds that the Respondent violated Rule 1.4 by failing to communicate with Mr. Kazim and keep him informed of the status of the matter despite repeated efforts by Mr. Kazim to speak with him."

"The Court further finds that Respondent's failure to deposit Mr. Kazim's $500 retainer and investigative money into the escrow account violated Rule 1.15(a),[18] Rule 16–604 and 16–609 and Business Occupations and Professions Article §§ 10–304 and 10–306.[19] The Respondent's taking of Mr. Kazim's $500 retainer and/or investigative fee on December 10, 2002 violated Maryland Rule 8.4(c)[20] by dishonestly taking trust monies that had not been earned. Hence, the Court finds that Respondent's lack of action in research-

---

**18.** Rule 1.15 states that, "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded...."

**19.** Section 10–306 states that "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

**20.** Rule 8.4(c) states that "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation...."

ing and advising Mr. Kazim that he did not have a cause of action against Mr. Fleckinger and the Respondent's failure to maintain Mr. Kazim's $500 in trust until earned or until paid to the investigator was conduct prejudicial to the administration of justice in violation of Rule 8.4(d). Moreover, the Court finds that Respondent violated Rule 8.1 by his wilful failure to respond to Petitioner's letters."

"In summary, this Court finds that the Respondent violated Maryland Rules of Professional Conduct 1.1, 1.3, 1.4, 1.15(a), 8.1(b) and 8.4(a)(c)(d), Rules 16–604, 16–607 and 16–609 and Business Occupations and Professions Article §§ 10–304 and 10–306 in connection with both complaints."

## STANDARD OF REVIEW

In proceedings involving attorney discipline, this Court has original and complete jurisdiction. *Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004). Clear and convincing evidence must support the hearing judge's findings. *Attorney Grievance Comm'n v. Gore,* 380 Md. 455, 468, 845 A.2d 1204, 1211 (2004). As a result, we review the record independently but generally accept the hearing judge's findings of fact unless they are clearly erroneous. *Attorney Grievance Comm'n v. Potter,* 380 Md. 128, 151, 844 A.2d 367, 380–381 (2004). Any conclusions of law made by the hearing judge, such as whether provisions of the MRPC were violated, are subject to our de novo review. *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

## DISCUSSION

A. *James' Exceptions Regarding the Findings of Fact.*

We have reviewed the record and conclude that Judge Jackson's findings of fact are supported by clear and convincing evidence.

Mr. James urges remand to take additional evidence citing various exceptions, each of which we will address, overruling each of them.[21]

Exception 1.b "The Findings of Fact indicate that Respondent never sent Mr. Kazim any written communications throughout the representation, without regard for the retainer agreement or billing statement introduced into evidence by Petitioner."

█ The evidence adduced at the hearing clearly and unequivocally establishes that no written communication was sent to Mr. Kazim throughout Mr. James's representation, including the retainer agreement, Petitioner's Exhibit 7B, and billing statement, Petitioner's Exhibit 11. Mr. Kazim testified that he "saw" Exhibit 7B in Mr. James's office and that he signed it "in the apartment to retain [Mr. James]" and further "the first time I'm seeing this, this billing worksheet" was at the hearing. Mr. Kazim further iterated on direct examination by Mr. James, "I've never received a statement from you, I've never received anything from you. You have never sent me any correspondence in the mail. I've never, ever seen this sheet but this moment here, Your Honor, that he has presented me this sheet."

The lack of any written correspondence was corroborated by the testimony of Mr. Marc Fielder, the investigator with the Attorney Grievance Commission, who reviewed Mr. James's client file on Mr. Kazim and did not see any correspondence to anyone in the file. Mr. James also told Mr. Fielder that he provided the billing statement to Mr. Kazim at a meeting. This exception is denied.

Exception 2. "The Findings of Fact filed on 8 November 2004 notes that three checks were presented on 22 April 2002 causing an overdraft. The Findings of Fact however, do not note either that the account in question was closed prior to 22 April 2002 upon the advice of Marc

---

**21.** Mr. James's exceptions are identical to those that he filed in support of a motion to alter or amend court decision that was denied by Judge Jackson on November 23, 2004.

Fielder (an investigator for and representative of the Office of Bar Counsel), that the checks were honored, or that all sums due concerned said checks were immediately satisfied by Respondent."

No testimony or exhibit was introduced to reflect any of the alleged facts. Mr. James certainly has argued that the events occurred in this sequence, but adduced no evidence to support these additional findings when he had the opportunity to do so. This exception is denied.

> *Exception 3.a.* "The Findings of Fact reference a violation of Rule 1.1 indicating a lack of action in researching and a failure to exhibit the legal knowledge, skill thoroughness and preparation reasonably necessary for the representation. There was no evidence presented by Petitioner as to the legal research conducted and Respondent was precluded from introducing evidence on the issue. Mr. Fielder testified only as to the causes of action initially considered by the Defendant."

> *Exception 3.b.* "The Findings of Fact indicate that no cause of action existed against Mr. Fleckinger because recovery could not be had for the act of adultery. Although the act of adultery was not a viable action, the adulterous acts were actionable under claims of negligence and intentional infliction of emotional distress."

The lack of legal research testified to by Mr. Fielder, the AGC investigator, is belied by Mr. James's contention in his exceptions and during argument before this Court, that "although the act of adultery was not a viable action, the adulterous acts were actionable under claims of negligence and intentional infliction of emotional distress." Essentially, James argues that violation of the criminal statute prohibiting adultery, Md.Code (2002, 2004 Cum.Supp.) § 10–501 of the Criminal Law Article, is in and of itself a cause of action somehow related to the negligence and intentional infliction of emotional distress claims. However, even *cursory* research on Mr. James's part would have revealed that in *Doe v. Doe,* 358 Md. 113, 747 A.2d 617 (2000), Judge Eldridge, speaking

for this Court, emphasized that, "This Court decided twenty years ago that public policy would not allow tort damages based upon adultery. *See Kline v. Ansell,* 287 Md. 585, 414 A.2d 929 (1980). That decision should not be ignored simply because the plaintiff has employed different labels and named a different defendant." *Id.* at 127, 747 A.2d at 624. This exception is denied.

B. *James's Exceptions to Findings of Fact based upon discovery sanctions.*[22]

Mr. James also has requested that the matter be remanded, "as the defense was severely prejudiced by the inability to use, in either defense or rebuttal documents which were made available to Petitioner."

On the morning of the hearing, Bar Counsel pressed preliminary motions regarding the untimeliness of Mr. James's responses to interrogatories, requests for production of documents and requests for admissions and genuineness of documents, all of which had been served upon Mr. James on May 29, 2004, but not responded to until August 31, 2004, just twenty days before the hearing. At the hearing, Mr. James conceded that his responses were "untimely."

In addition to untimeliness, Bar Counsel asserted that Mr. James's Answers to Interrogatories were unresponsive: Inter-

---

**22.** The docket reflects that a scheduling order, dated July 26, 2004, was entered setting the hearing date for September 20, 2004 and mandating completion of discovery by July 30, 2004, and the filing of all discovery dispute motions by August 13, 2004. On August 5, 2004, after having requested the responses by letter dated July 20, 2004, Petitioner filed a motion for sanctions to which the Respondent answered on August 31, 2004. In this Motion, Petitioner detailed Respondent's failures to respond and requested that the facts and documents identified in the admissions be deemed admitted and genuine, respectively, and that Respondent "be precluded from asserting as a defense any information sought in Petitioner's Interrogatories or Requests for Production of Documents," citing Maryland Rules 2–421, 2–422, 2–424(b), 2–431, 2–432(a), 2–433, 16–754(a)(2), and 16–756.

Respondent, on August 31, 2004, the day of his deposition, responded to the motion for sanctions by asserting that he "had hand-delivered" responses and "has been deposed," thereby rendering the Motion "moot."

rogatory number 9 stated, "If you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, provide a brief description, by category and location, of all such documents and other tangible things, and identify all persons having possession, custody, or control of them," to which Respondent replied, "Please see response to request for production of documents. I may rely upon any document that has been reviewed by, received from or sent to the Petitioner." Interrogatory number 17 requested, "For each of your clients named in the Petition for Disciplinary Action, state in detail the date you were retained, the nature of the legal work for which you were retained, the actual work you performed and the date of termination (if any) for each employment," to which Mr. James responded, "Please see request for production of documents." Interrogatory number 18 asked, "For each of your clients named in the Petition for Disciplinary Action, state the date of each communication you had with each client and the purpose and nature of each such communication (e.g., letter, telephone, etc.) and identify all documents which evince such communications," to which Mr. James responded, "I cannot remember the date of each communication I had with each named client and the purpose and nature of each such communication as specified in this interrogatory." Interrogatory number 19 queried, "For each of your clients named in the Petition for Disciplinary Action, identify each person with whom you communicated on behalf of each client, the date, purpose and nature of each such communication and identify all documents which evince such communications," to which Mr. James replied, "I cannot remember each person with whom I communicated on behalf of each named client as specified in this interrogatory." Further, in response to each and every request for production of documents, Mr. James had stated, "Upon availability, inspection and related activities concerning relevant and non-privileged material, will be provided as requested."

Mr. James asserts that he made client files available to Mr. Fielder, the investigator for Bar Counsel, and that he made

boxes of his client files available to Bar Counsel on August 10, 2004, when the diversion agreement was signed, and on August 31, 2004, after the diversion agreement was revoked, when his deposition was taken; Bar Counsel did not review the uncategorized boxes of documents.

After lengthy argument presented by both Petitioner and Respondent, the hearing judge found that the responses were untimely and not responsive, agreed to deem admitted the admissions of facts and genuineness of documents, and foreclosed the Respondent from putting on documentary evidence relying upon that which had been requested in those requests. Respondent, however, argues that he was prejudiced by his inability to use documents "made available to Petitioner" on August 31st, specifically with respect to his inability to "refresh" Mr. Kazim's recollection on cross-examination or for rebuttal, to show the frequency and specific dates of communication with Mr. Kazim, or to provide two cash deposits totaling $1,476.30.

■ First, the responses to the discovery requests were untimely, even if they were considered to be responsive, having been filed on August 31, 2004, just twenty days prior to the hearing. The hearing judge did not abuse his discretion in determining that the conceded untimeliness of all of the discovery responses was an essential factor in precluding Respondent's use of information not timely produced. *See Wilson v. Crane,* 385 Md. 185, 867 A.2d. 1077 (2005) ("Thus, an abuse of discretion should only be found in the extraordinary, exceptional or most egregious case"), citing *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 13–14, 174 A.2d 768, 771 (1961) (stating that "trial judges, who are primarily called upon to administer [discovery] rules, are vested with a reasonable, sound discretion in applying them, which discretion will not be disturbed in the absence of a showing of its abuse").

In addition, the hearing judge found that the answers to interrogatories and requests for production of documents were non-responsive, which also was not an abuse of his discretion.

Maryland Rule 2–421(b) provides, in pertinent part, that:

The party to whom the interrogatories are directed shall serve a response within 30 days after service of the interrogatories or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later. The response shall answer each interrogatory separately and fully in writing under oath, or shall state fully the grounds for refusal to answer any interrogatory. The response shall set forth each interrogatory followed by its answer. An answer shall include all information available to the party directly or through agents, representatives, or attorneys. . . .

Rule 2–422 provides, in pertinent part, that:

(c) **Response.** The party to whom a request is directed shall serve a written response within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later. The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is refused, in which event the reasons for refusal shall be stated. If the refusal relates to part of an item or category, the part shall be specified.

(d) **Production.** A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

Neither Rule was satisfied by Respondent in this case. At argument Respondent asserted that he had responded adequately to the interrogatories and the request for production of documents because he had proffered interrogatory answers on August 31, 2004, twenty days before the hearing. Those answers, however, were woefully inadequate in almost all respects, but particularly when in response to Interrogatory number 9.

Compounding this non-responsiveness was the fact that, as Respondent conceded at argument, his response to the Request for Production of Documents was essentially that "in-

spection and related activities will be permitted as requested unless the request is refused." Mr. James argues that he was being responsive by providing boxes of uncategorized documents three months after service of the Requests, on the day of his deposition, which had been separately noted, and twenty days before the hearing. Under these circumstances, we do not find that Judge Jackson abused his discretion in determining that Mr. James was unresponsive to discovery requests and in imposing the specific sanction. The sanction imposed by Judge Jackson clearly was proportionate to the discovery abuse by Mr. James. Md. Rule 2–433(a); *see, e.g., People v. Camp,* 352 Ill.App.3d 257, 287 Ill.Dec. 336, 815 N.E.2d 980, 984 (2004) (remanding the case to the trial court because sanction was disproportionate to the discovery violation); *Usowski v. Jacobson,* 267 Conn. 73, 836 A.2d 1167, 1174 (2003) (stating that the sanction must be proportional to violation and is reviewed under an abuse of discretion standard).

Even were we to find an abuse of discretion, which we do not, the respondent was not prejudiced by the hearing judge's decision. Although Mr. James alleges that he lacked the ability to cross-examine Mr. Kazim, and "refresh" his recollection, as to dates and times, the record reflected that Mr. James used Mr. Kazim's complaint to the AGC to refresh his recollection of four visits that Mr. James conducted with Mr. Kazim that lasted approximately a half an hour or less and numerous messages that Mr. Kazim left for Mr. James on the latter's cell phone.

Mr. James also refers in this exception to "the two cash deposits totaling $1,476.30" noted in the findings of fact, as coming from Mr. Kazim's $1,500 check, to support a finding of prejudice. The gravamen of the issue surrounding the money is that none of Mr. Kazim's retainer ever was placed in a trust account, including the $500 allegedly to be paid to an investigator. Further, Mr. James, in his answer to the Petition for Disciplinary Action, admitted that, "Upon receipt of Kazim's $1,500 check, the Respondent cashed the check and thereafter made two cash deposits into his operating account totaling $1,476.30." This exception is denied.

## CONCLUSIONS OF LAW

Neither Petitioner nor Respondent takes any specific exception to the Conclusions of Law rendered by Judge Jackson with respect to both complaints. Judge Jackson found violations of MRPC 1.1, 1.3, 1.4, 1.15(a), 8.1(b), and 8.4(a), (c), and (d); Maryland Rule 16–604, 16–607, 16–609; and Sections 10–304 and 10–306 of the Business Occupations and Professions Article.[23]

With respect to Rule 1.1 requiring competent representation to a client, we heretofore have noted that in the Kazim matter, James did not provide "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation" because even with cursory research James would have found that tort damages are not allowed based upon adultery. *Doe v. Doe*, 358 Md. at 124, 747 A.2d at 624 ("This Court decided twenty years ago that public policy would not allow tort damages based upon adultery.").

■ With respect to the Davis matter, Respondent had a negative balance resulting from the inclusion of $10.00 in the Smith check over the amount that should have been paid and an insufficient funds charge in his escrow account at the time he deposited the $8,000 Davis settlement into his escrow account, causing the Davis settlement monies to be "lessened" by the Smith arrearage. The net proceeds due Ms. Davis from the $8,000 settlement was $1,774.75, and was not maintained intact during the period it was held in the escrow account, so that on three different days there was less than $1,774.75 in James's escrow account. We previously have held that a "[r]espondent's failure to properly maintain [a client's] settlement monies in his escrow account demonstrates his incompetence pursuant to Rule 1.1." *Attorney Grievance*

---

**23.** Although the Conclusions of Law indicate that the judge found violations of these sections in connection with both complaints, not all of the violations were charged with respect to both complaints. We shall restrict our remarks to these sections charged with respect to each complaint.

*Comm'n v. Brown,* 380 Md. 661, 667–68, 846 A.2d 428, 432 (2004).

 In January of 2000, James began using his escrow account, in which he previously deposited funds from a settlement for Ms. Davis, for both business and personal expenses. We have previously held that "[s]uch conduct constitutes clear and convincing evidence of commingling" in violation of Maryland Rule 16–607. *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 469, 800 A.2d 782, 786 (2002). James intentionally ceased using his personal account and began using his trust account, and Ms. Davis's funds contained therein, for both business and personal expenses after discussion with his spouse. Because James's conduct with respect to his misuse of Ms. Davis's funds was a willful violation of Section 10–306 of the Business Occupations and Professions Article, he is subject to discipline under Section 10–307 of the Business Occupations and Professions Article. *See Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 461, 671 A.2d 463, 469 (1996).

The same behavior in the Davis matter as well as James's failure to deposit Mr. Kazim's retainer and $500 in funds to be paid to an investigator also violated MRPC 1.15(d) and 8.4(d) as funds "to be delivered in whole or in part to a client or third person," and Maryland Rules 16–604 and 16–609 and Section 10–306 of the Business Occupations and Professions Article.[24] *Id.* at 460–61, 671 A.2d at 469; *see also Attorney Grievance Comm'n v. Ober,* 350 Md. 616, 632, 714 A.2d 856 (1998). We have previously held that "violations of ... MRPC 1.15 ... 'necessarily' result in a violation of MRPC 8.4(a) as well." *Attorney Grievance Comm'n v. Gansler,* 377 Md. 656, 699 n. 22, 835 A.2d 548, 573 n. 22 (2003), quoting *Attorney Grievance Comm'n v. Gallagher,* 371 Md. 673, 710–11, 810 A.2d 996, 1018 (2002).

---

**24.** James also used his escrow account for personal and professional matters since January of 2000. In fact he presented three escrow checks on August 22, 2002, which caused an overdraft of $70,000 and is a violation of the same Rules and statutes.

■ The funds given to James by Mr. Kazim as a retainer and to pay for the costs of an investigator qualify as "trust money" under Section 10–301 of the Business Occupations and Professions Article. *See In re Printing Dimensions, Inc.,* 153 B.R. 715, 720 (Bankr.D.Md.1993). James's failure to deposit the "trust money" violated Section 10–304 of the Business Occupations and Professions Article, which requires that "a lawyer expeditiously shall deposit trust money into an attorney trust account." Md.Code (2000, 2004 Repl.Vol.), § 10–304(a) of the Business Occupations and Professions Article; *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 299, 818 A.2d 219, 233 (2003).

Judge Jackson also concluded that the Respondent violated MRPC 1.3 and 1.4 in his handling of the Kazim matter. Rule 1.3 required Respondent to exercise reasonable diligence and promptness in representing his client and Rule 1.4 required the Respondent to keep Mr. Kazim reasonably informed about the status of his matter, comply with reasonable requests for information and explain with reasonable necessity a matter to permit informed decision-making on the part of the client. The Respondent clearly did not act competently in pursuing a cause of action with his client that had no legal basis, and failed to convey any information, let alone informed data, to Mr. Kazim, even in the face of repeated telephone calls from the client. He not only failed to act, he also did not react to his client's attempts to contact him, even though James had collected $1,500 to pursue a baseless cause of action. This unprofessional behavior is violative of Rules 1.3 and 1.4. *See Attorney Grievance Comm'n v. West,* 378 Md. 395, 409, 836 A.2d 588, 596 (2003).

■ The hearing judge determined that James acted in violation of MRPC 8.4(c) when he dishonestly took trust monies from Mr. Kazim by failing to deposit the $500 retainer and investigative money in the trust account. We have previously held that "[i]ntentional misappropriation is also a violation of MRPC Rule[ ] ... 8.4(c)." *Attorney Grievance*

*Comm'n v. Zdravkovich,* 381 Md. 680, 704, 852 A.2d 82, 96 (2004).

Finally, the hearing judge found that James violated MRPC 8.1 by failing to respond to Bar Counsel's letters of July 9, 2003, July 30, 2003, September 11, 2003, and September 24, 2003, requesting information regarding Mr. Kazim's complaint. Mr. James's wilful and repeated failure to respond constitutes conduct that was violative of Rule 8.1. *See Attorney Grievance Comm'n v. Rose,* 383 Md. 385, 392, 859 A.2d 659, 663 (2004).

## SANCTION

As we recently stated in *Attorney Grievance Comm'n of Maryland v. Goodman,* 381 Md. 480, 850 A.2d 1157 (2004), the appropriate sanction for a violation of the MRPC depends on the facts and circumstances of each case, including consideration of any mitigating factors. *Id.* at 496, 850 A.2d at 1166; *Attorney Grievance Comm'n v. Awuah,* 374 Md. 505, 526, 823 A.2d 651, 663 (2003); *Attorney Grievance Comm'n v. McClain,* 373 Md. 196, 211, 817 A.2d 218, 227 (2003). Primarily, we seek "to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession." *Awuah,* 374 Md. at 526, 823 A.2d at 663, quoting *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 303, 818 A.2d 219, 236 (2003). To achieve the goal of protecting the public, we impose a sanction that is "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.*

The Petitioner has requested that we disbar Respondent and we agree. The hearing judge did not find any mitigation for James's actions nor has the Respondent offered any. Mr. James acted in direct violation of 1.3, 1.4, 1.15, and 8.4, Maryland Rules 16–604, 16–607, and 16–609, and Maryland Code, Sections 10–304, 10–306, and 10–307 of the Business Occupations and Professions Article. Mr. James misappropriated Ms. Davis' funds in escrow, misappropriated Mr.

Kazim's money by not placing funds in escrow, and by using client funds for personal purposes. We have often stated that, "[i]ntentional [m]isappropriation, by an attorney, of funds entrusted to [an attorney's] care 'is an act infected with deceit and dishonesty and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment.'" *Attorney Grievance Comm'n v. Spery*, 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002); *see also Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 410, 773 A.2d 463, 483 (2001).

To compound the problem, Mr. James, in violation of MRPC 1.1, has acted incompetently and, in violation of MRPC 8.1, repeatedly has failed to respond to requests of Bar Counsel. Certainly, such conduct reflects Mr. James's inability to avoid further misconduct. The appropriate sanction is disbarment.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.*