69 A.3d 1121

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Gina M. O'LEARY.

Misc. Docket AG No. 20, Sept. Term, 2012.

Court of Appeals of Maryland.

July 10, 2013.

Lydia E. Lawless, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

No Argument on behalf of the Respondent.

Argued before BELL, C.J.,* HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

Gina M. O'Leary, Respondent, was admitted to the Bar of this Court on December 12, 2001.[1] On May 21, 2012, the Attorney Grievance Commission, acting through Bar Counsel ("Bar Counsel"), pursuant to Maryland Rule 16–751(a),[2] filed a "Petition For Disciplinary or Remedial Action" against O'Leary, charging numerous violations of the Maryland Law-

---

* Bell, C.J., participated in the hearing of the case, in the conference in regard to its decision and in the adoption of the opinion, but he had retired from the Court prior to the filing of the opinion.

1. O'Leary was temporarily suspended, pursuant to Rule 16–811(f)(4), on March 15, 2012 for failure to pay her annual assessment to the Client Protection Fund.

2. Rule 16–751(a) provides, in relevant part:

yers' Rules of Professional Conduct, including Rules 1.7(a)(2) (Conflict of Interest: General Rule),[3] 1.8(i) (Conflict of Interest: Current Clients: Specific Rules),[4] 1.16(a)(1) (Declining or Terminating Representation),[5] 4.2(a) (Communication with Person Represented by Counsel),[6] 8.1 (Bar Admission and Disciplinary Matters),[7] and 8.4(a), (c), and (d) (Misconduct).[8]

The factual bases of these charges arose out of O'Leary's representation of Wayne Joseph Cosgrove in *Cosgrove v.*

---

**(a) Commencement of disciplinary or remedial action.** (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

**3.** Rule 1.7(a)(2) provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:

\* \* \*

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**4.** Rule 1.8(i) provides:

(i) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
(1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and
(2) subject to Rule 1.5, contract with a client for a reasonable contingent fee in a civil case.

**5.** Rule 1.16(a)(1) provides:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;

**6.** Rule 4.2(a) provides:

(a) Except as provided in paragraph (c), in representing a client, a lawyer shall not communicate about the subject of the representation with a person who the lawyer knows is represented in the matter by another lawyer unless the lawyer has the consent of the other lawyer or is authorized by law or court order to do so.

**7.** Rule 8.1 provides:

*Cosgrove,* a divorce and child custody action initiated by his wife, Diana Cosgrove. Bar Counsel alleged that O'Leary entered into a romantic relationship with Mr. Cosgrove, repeatedly communicated with Ms. Cosgrove about the subject matter of the case without the consent of her counsel, David Nowak, and repeatedly misrepresented to Mr. Nowak that she did not represent Mr. Cosgrove. The Petition also alleged that O'Leary, during the course of Bar Counsel's investigation, knowingly made false statements to Bar Counsel and knowingly failed to respond to lawful requests for information. In an Order dated May 23, 2012, this Court referred the matter to Judge Sherrie R. Bailey of the Circuit Court for Baltimore County for a hearing, pursuant to Rule 16–757.[9]

On June 6, 2012, O'Leary was personally served with the Petition, as well as Bar Counsel's Request for Admission of

---

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

8. Rule 8.4 provides, in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

9. Rule 16–757 provides:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or

Facts and Genuineness of Documents and attached exhibits, First Set of Interrogatories, and First Request for Production of Documents. O'Leary did not respond, and Judge Bailey entered an Order of Default on July 13, 2012; a hearing was scheduled for August 20, 2012.

On August 7, 2012, O'Leary filed an Answer to the Petition, a Motion to Vacate the Order of Default and a Request for Postponement. Bar Counsel did not oppose O'Leary's request to postpone the hearing, which was granted by Judge Bailey; the hearing was rescheduled for September 27, 2012.

On August 30, 2012, Bar Counsel filed a Motion for Sanctions pursuant to Rules 2–432 and 2–433,[10] claiming that O'Leary had failed to respond to interrogatories, requests for

---

the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

10. Rule 2–432(a) provides:

(a) **Immediate sanctions for certain failures of discovery.** A discovering party may move for sanctions under Rule 2–433(a), without first obtaining an order compelling discovery under section (b) of this Rule, if a party or any officer, director, or managing agent of a party or a person designated under Rule 2–412(d) to testify on behalf of a

admissions and request for documents. Bar Counsel also filed a supplement, on September 13, 2012, after O'Leary failed to appear for her deposition on September 11, 2012; O'Leary did not respond. Judge Bailey granted Bar Counsel's Motion for Sanctions and ordered that each of Bar Counsel's Requests for Admission of Fact be deemed admitted, each document attached to Bar Counsel's First Request for Admission of Fact and Genuineness of Documents be deemed genuine and that O'Leary be precluded at trial from presenting any documents, calling any witnesses, presenting any testimony or evidence contradictory to Bar Counsel's Requests for Admission of Facts and Genuineness of Documents, or testifying on her own behalf, except in mitigation.

After the hearing, Judge Bailey issued written Findings of Fact and Conclusions of Law. She found that O'Leary began a romantic, then intimate relationship with Mr. Cosgrove while she represented him in *Cosgrove v. Cosgrove*, a divorce case, and that the two of them moved in together and contributed child support payments to Diana Cosgrove. The findings also

---

party, fails to appear before the officer who is to take that person's deposition, after proper notice, or if a party fails to serve a response to interrogatories under Rule 2–421 or to a request for production or inspection under Rule 2–422, after proper service. Any such failure may not be excused on the ground that the discovery sought is objectionable unless a protective order has been obtained under Rule 2–403.

Rule 2–433(a) provides:

(a) **For certain failures of discovery.** Upon a motion filed under Rule 2–432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:

(1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;

(2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or

(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party....

recognized that O'Leary repeatedly acknowledged to opposing counsel, Mr. Nowak, that due to her personal relationship with Mr. Cosgrove, her employer, Mark W. Howes, would be representing Mr. Cosgrove. Judge Bailey further found that O'Leary personally communicated with Ms. Cosgrove about the case while Ms. Cosgrove was represented by Mr. Nowak, who never consented to O'Leary's communications with his client. It was not until Ms. Cosgrove obtained a temporary peace order against O'Leary, in July of 2011, that Mr. Nowak learned of O'Leary's communications with his client.

Judge Bailey further found that O'Leary never terminated her representation of Mr. Cosgrove. The hearing judge found that O'Leary was fired by Mr. Howes in May of 2011 and was directed to strike his name and his firm's name from *Cosgrove v. Cosgrove*, which O'Leary did not do. O'Leary continued to engage in settlement negotiations with Mr. Nowak on behalf of Mr. Cosgrove and signed the resulting Consent Order as "Attorney for the Defendant," Mr. Cosgrove, in June of 2011. Judge Bailey also found that O'Leary repeatedly misrepresented, during Bar Counsel's investigation, that she signed the Consent Order because Mr. Howes was unavailable and that she failed to respond to three valid requests for information. Judge Bailey concluded that O'Leary's conduct violated, by clear and convincing evidence, Rules 1.7(a), 1.8(i), 1.16(a), 4.2(a), 8.1(a) and (b), and 8.4(a), (c), and (d) and that O'Leary failed to prove any facts in mitigation by a preponderance of the evidence.[11] Judge Bailey's Findings of Fact and Conclusions of Law stated:

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW* [12]

### PROCEDURAL HISTORY

This attorney disciplinary matter was transmitted to this Court by the Court of Appeals by Order dated May 23, 2012

---

11. Although notified of oral argument in this Court, O'Leary did not appear.

12. References to the record and internal footnotes have been omitted.

to make findings of fact and conclusions of law. On June 6, 2012, the Respondent was personally served with the Order of the Court of Appeals dated May 23, 2012, the Petition for Disciplinary or Remedial Action, Summons of the Circuit Court for Baltimore County dated May 31, 2012, Petitioner's First Set of Interrogatories, Petitioner's First Request for Production of Documents and Electronically Stored Information and Property and Petitioner's First Request for Admission of Facts and Genuineness of Documents and attached Exhibits. In its Petition for Disciplinary or Remedial Action, Petitioner alleged that Respondent violated the following Maryland Lawyers' Rules of Professional Conduct ("MRPC"): 1.7 (conflict of interest); 1.8 (conflict of interest); 1.16(a); 4.2 (communication with person represented by counsel); 8.1(a) and (b) (bar admission and disciplinary matters); and 8.4(a), (c) and (d) (misconduct).

An Affidavit of Service and Notice of Service of Discovery Materials were filed by Petitioner on June 13, 2012. On July 3, 2012, no Answer having been filed, Petitioner filed a Motion for Order of Default. The Motion for Order of Default was granted by Order dated July 13, 2012 and a hearing was scheduled for August 20, 2012. A Notice of Default was sent by the Court to Respondent on July 16, 2012. On August 7, 2012, Respondent filed an Answer to the Petition for Disciplinary or Remedial Action, Motion to Vacate Order of Default and Request for Postponement of the August 20, 2012 hearing. On or about August 13, 2012, Respondent filed Respondent's Second Request for Postponement of Grievance Hearing Set for August 20, 2012. Petitioner did not file an opposition to the Motion to Vacate Order of Default or either request for postponement. By Order dated August 14, 2012, Respondent's request for postponement was granted and the hearing was re-set for two days beginning September 27, 2012. By Order dated September 5, 2012, the Order of Default was vacated.

On August 30, 2012, Petitioner filed a Motion for Sanctions pursuant to Maryland Rule 2–432 and 2–433 based on Respondent's failure to respond to Petitioner's Interrogato-

ries, Requests for Documents and Requests for Admissions. Petitioner filed a Motion to Shorten Time to Respond to Petitioner's Motion for Sanctions pursuant to Maryland Rule 1–204. By Order dated September 5, 2012, the Court granted Petitioner's Motion to Shorten Time to Respond to Petitioner's Motion for Sanctions and directed Respondent to file any written response to Petitioner's Motion for Sanctions by Tuesday, September 11, 2012 at 4:30 p.m. On September 13, 2012, Petitioner filed a Supplement to Petitioner's Motion for Sanctions based on Respondent's failure to appear at her deposition scheduled for September 11, 2012. Respondent did not file a written response or opposition to Petitioner's Motion for Sanctions or Supplement thereto.

By Order dated September 24, 2012, the Court granted Petitioner's Motion for Sanctions and ordered as follows: (1) that each of Petitioner's Requests for Admission of Fact is deemed admitted pursuant to Maryland Rule 2–424(b); (2) that each document attached to Petitioner's First Request for Admission of Fact and Genuineness of Documents is deemed genuine; (3) that the Respondent be, and hereby is, precluded from calling any witnesses at trial; (4) that the Respondent be, and hereby is, precluded from presenting any documents at trial; (5) that the Respondent be, and hereby is, precluded from presenting any evidence or testimony which contradicts the facts established by Petitioner's First Request for Admission of Facts and Genuineness of Documents; and (6) that the Respondent be, and hereby is, precluded from testifying to any matter other than any alleged mitigation.

On September 27, 2012, the Parties appeared for the evidentiary hearing. The Court heard, as a preliminary matter, Respondent's oral Motion for Reconsideration of Order of Court dated September 24, 2012. After consideration of the argument of Respondent and Petitioner's attorney, medical records proffered by Respondent and email communication proffered by Petitioner and the record, the

Court denied Respondent's Motion for Reconsideration of Order of Court dated September 24, 2012.

The evidentiary hearing was conducted on September 27, 2012, pursuant to Maryland Rule 16–757.

## STANDARD OF REVIEW

The Petitioner in this matter has the burden of proving, by clear and convincing evidence, the averments of the petition. The Respondent has the burden of proving an affirmative defense or a matter of mitigation or extenuation by a preponderance of the evidence. Maryland Rule 16–757(b).

## PETITIONER'S ALLEGATIONS

The Petitioner charges that the Respondent engaged in professional misconduct as defined by Maryland Rule 16–701(i). All allegations of misconduct stem from Respondent's conflicted representation of Mr. Cosgrove, as well as Respondent's communication with Ms. Cosgrove, a person represented by counsel.

### *Representation of Mr. Cosgrove*

Petitioner alleges that in August 2010, Mr. Cosgrove and Respondent began an attorney-client relationship. On November 16, 2010, Respondent entered her appearance and the appearance of her employer, The Law Offices of Mark W. Howes, LLC, on behalf of Mr. Cosgrove. Respondent filed an Answer on behalf of Mr. Cosgrove, to Ms. Cosgrove's pending Complaint for Child Support as well as Motion to Vacate Order of Default. In November of 2010, Respondent became romantically involved with Mr. Cosgrove.

In January, 2011, Respondent began sharing financial obligations with Mr. Cosgrove and thus, had a proprietary interest in *Cosgrove v. Cosgrove* where she shared Mr. Cosgrove's child support obligations. In March 2011, Ms. Cosgrove retained David Nowak, Esquire to represent her

in *Cosgrove v. Cosgrove*. On March 18, 2011, Respondent misrepresented to Mr. Nowak that Mark W. Howes, Esquire would be handling the case and on March 25, 2011, Mr. Nowak and Respondent appeared at a scheduling conference and signed the Master's Settlement Conference Checklist as attorneys for their respective clients. On April 29, 2011, Respondent prepared and filed "Worksheet A—Child Support Obligation" on behalf of Mr. Cosgrove. Then in May, 2011, Respondent was fired from Mr. Howes' firm and she took the Cosgrove case file with her, but agreed to strike his and his firm's name from all of her cases including *Cosgrove v. Cosgrove.*

On May 6, 2011, Respondent faxed Mr. Nowak information on behalf of Mr. Cosgrove. On June 2, 2011, Respondent signed a Consent Order as "Attorney for Defendant," and shortly after the Order was entered, Respondent, on behalf of Mr. Cosgrove, began to attempt to renegotiate the terms of the Order with Ms. Cosgrove. On July 26, 2011, after learning that Respondent had not filed a motion to strike his appearance, Mr. Howes filed a Motion to Withdraw Appearance of Defendant's Counsel which was granted on September 6, 2011. A copy of the Order striking Mr. Howes' appearance was sent to Respondent but she continued to prepare motions and pleadings on behalf of Mr. Cosgrove which Mr. Cosgrove signed, *pro se.*

### Communication with Ms. Cosgrove

On July 15, 2011, Ms. Cosgrove filed a Petition for Peace Order against Respondent in the District Court of Maryland for Baltimore County. A Temporary Peace Order was granted. A Final Peace Order hearing was scheduled for July 22, 2011. Allegedly, on that day, Respondent admitted to Mr. Nowak while standing outside the courtroom that she had been in contact with his client, Ms. Cosgrove regarding the litigation pending in *Cosgrove v. Cosgrove.* The Peace Order was dismissed by Ms. Cosgrove in exchange for Respondent agreeing to cease representation of Mr. Cosgrove.

*Bar Counsel Investigation*

Petitioner alleges that during the investigation of Respondent's conduct, Respondent knowingly made false statements of material fact to Bar Counsel and knowingly failed to respond to lawful requests for information.

## FINDINGS OF FACT

Respondent was admitted to the Maryland Bar on December 12, 2001. Respondent was temporarily suspended from the practice of law on March 15, 2012 for non-payment of her assessment to the Client Protection Fund.

### The Cosgrove Matter

On April 23, 2010, Diana Cosgrove, *pro se,* filed a Complaint for Child Support in the Circuit Court for Baltimore County against her husband, Wayne Cosgrove (*Cosgrove v. Cosgrove* Case No. 03C10004967). In August 2010, Respondent and Mr. Cosgrove began an attorney-client relationship. Prior to the attorney-client relationship, Mr. Cosgrove, Ms. Cosgrove, and Respondent were known to one another and acquainted socially. Additionally, they attended events with mutual friends.

Sometime in September, 2010, Respondent drafted a proposed settlement agreement which was presented by Respondent and Mr. Cosgrove to Ms. Cosgrove for approval. A default was entered by the court against Mr. Cosgrove on October 20, 2010. On November 16, 2010, Respondent entered her appearance and the appearance of her then-employer, The Law Offices of Mark W. Howes, LLC, on behalf of Mr. Cosgrove. On November 16, 2010, Respondent filed an Answer to Complaint for Child Support and Motion to Vacate Order of Default on behalf of Mr. Cosgrove.

In November 2010, Respondent became romantically involved with Mr. Cosgrove. On or about January 1, 2011, Mr. Cosgrove moved into Respondent's home.

In March 2011, Ms. Cosgrove retained David Nowak, Esquire, to represent her in *Cosgrove v. Cosgrove.* As of March 18, 2011 Respondent knew that Ms. Cosgrove was represented by Mr. Nowak. Respondent and Mr. Nowak discussed prior to the scheduling conference, the fact that Respondent may be called as a witness in the Cosgrove matter. On March 18, 2011, Respondent told Mr. Nowak that Mr. Howes would be handling the case. Respondent assured Mr. Nowak that she was only appearing at the scheduling conference.

On March 25, 2011, Respondent appeared at the scheduling conference on behalf of Mr. Cosgrove. At the scheduling conference, Mr. Nowak entered his appearance on behalf of Ms. Cosgrove. At the scheduling conference Respondent signed the Master's Settlement Conference Checklist as attorney for Mr. Cosgrove and Mr. Nowak signed as attorney for Ms. Cosgrove. The Master's Settlement Conference Checklist clearly indicated that the Cosgrove matter was contested as to physical and legal custody of the minor children, visitation and child support. At the scheduling conference, Respondent again acknowledged to Mr. Nowak that she was a potential witness and stated that Mr. Howes would be handling the case.

On April 12, 2011, Mr. Nowak filed an Amended Complaint for Limited Divorce, Child Custody, Child Support and Other Relief and served written discovery on Mr. Howes. The Amended Petition clearly established that all issues, including legal and physical custody, visitation, child support, ownership of personal property, value of marital property, expenses of health insurance and attorney's fees were disputed.

Although Respondent stated to Mr. Nowak that she would not be handling the Cosgrove matter due to her conflict, Respondent continued to represent Mr. Cosgrove. On April 29, 2011, Respondent prepared and filed "Worksheet A—Child Support Obligation" on behalf of Mr. Cosgrove. On May 6, 2011, Respondent faxed Mr. Nowak information on behalf of Mr. Cosgrove.

In May, 2011, Respondent was fired by Mr. Howes. After Respondent was fired by Mr. Howes, Respondent took the Cosgrove case with her from Mr. Howes' office. At the conclusion of her employment at The Law Offices of Mark W. Howes, LLC, Respondent was instructed to strike Mr. Howes' and his firm's name from all of her cases including *Cosgrove v. Cosgrove.* Respondent verbally agreed to strike Mr. Howes' and his firm's appearance from all of her cases including *Cosgrove v. Cosgrove.*

Respondent never moved to strike the appearance of either Mr. Howes or The Law Offices of Mark W. Howes, LLC as counsel for Mr. Cosgrove. Respondent misrepresented to Mr. Nowak that, following May 2011, Mr. Howes was still involved in the Cosgrove matter.

Following March 18, 2011, when Respondent first became aware that Ms. Cosgrove was represented by counsel, Respondent continued to communicate directly with Ms. Cosgrove about the subject of the representation. Respondent discussed with Ms. Cosgrove the visitation schedule. While Respondent was representing Mr. Cosgrove, hundreds of text messages were sent by her from her phone number, 410–418–8678, to Ms. Cosgrove. Because Respondent also provided frequent daycare for the Cosgrove children, many of these messages related to their care. However, on May 23, 2011, Respondent sent Ms. Cosgrove a text message stating "The reason you qualify for child support is the daycare you pay. Your attorney needs to explain this to you." On June 1, 2011, Respondent sent Ms. Cosgrove a text message stating "Call mr nowak asap he needs u to sign the consent order this afternoon".

Respondent never sought authorization from Mr. Nowak to contact his client, Ms. Cosgrove, about *Cosgrove v. Cosgrove.* Mr. Nowak was unaware that Respondent was communicating with his client.

A pendente lite hearing was scheduled in *Cosgrove v. Cosgrove,* for June 2, 2011. Between March 21, 2011 and June 2, 2011, Respondent and Mr. Nowak engaged in settlement discussions on behalf of the Cosgroves. The

negotiations Respondent had with Mr. Nowak, as well as directly with Ms. Cosgrove resulted in a Consent Order, drafted by Respondent, which was signed by all parties on June 2, 2011. Respondent signed the Consent Order as "Attorney for Defendant".

The Consent Order resolved all outstanding issues between the Cosgroves including, physical and legal custody of the minor children, a detailed visitation schedule, child support, expenses for the children's child care and extracurricular activities, division of marital property, alimony, division of marital debts and attorney's fees. The Consent Order provided that Mr. Cosgrove would file a divorce petition based on a one-year voluntary separation in January 2012. On June 2, 2011, at the time the Consent Order was entered, Respondent had a proprietary interest in *Cosgrove v. Cosgrove* because she and Mr. Cosgrove shared expenses.

Shortly after the Consent Order was entered, Respondent, on behalf of Mr. Cosgrove, began to attempt to renegotiate the terms of the Order directly with Ms. Cosgrove. Specifically, Respondent attempted to renegotiate the amount of child support Mr. Cosgrove was required to pay to Ms. Cosgrove.

On July 11, 2011, Respondent sent a text message to Ms. Cosgrove stating: "Joe [Mr. Cosgrove] is filing for full custody and asking that u see kids every other weekend. Talk to ur lawyer ... no judge will give u every weekend off. And if u get full custody we will only have them every other weekend. So either way we won't have them every weekend." On July 13, 2011, Ms. Cosgrove sent Respondent a text message stating "Leave me alone!!" to which Respondent replied "Leave Joe [Mr. Cosgrove] alone".

On July 15, 2011, Ms. Cosgrove filed a Petition for Peace Order against Respondent in the District Court of Maryland for Baltimore County (Case No. 0804SP051902011). A Temporary Peace Order was granted to Ms. Cosgrove against Respondent on July 15, 2011. A Final Peace Order hearing was scheduled for July 22, 2011. Ms. Cosgrove

retained Mr. Nowak to represent her at the Final Peace Order hearing. After being retained in the peace order matter, Mr. Nowak learned, for the first time, that Respondent had been in communication with Ms. Cosgrove during the course of the negotiation of the Consent Order, specifically that 136 text messages had been sent from Respondent's phone to Ms. Cosgrove May 9, 2011 through June 8, 2011. On July 22, while standing in the hallway outside the courtroom, Respondent admitted to Mr. Nowak that she had been in contact with his client, Ms. Cosgrove, regarding the litigation pending in *Cosgrove v. Cosgrove.* Ms. Cosgrove ultimately agreed to dismiss the Peace Order in exchange for Respondent agreeing to cease representation of Mr. Cosgrove in *Cosgrove v. Cosgrove* and Respondent agreeing not to contact Ms. Cosgrove.

On July 25, 2011, Mr. Nowak filed Plaintiff's Motion to Disqualify Gina O'Leary as Counsel and Request for a Hearing in *Cosgrove v. Cosgrove.* Respondent did not file an opposition or response to Plaintiff's Motion to Disqualify Gina O'Leary as Counsel.

On July 26, 2011, after learning that Respondent had not filed a motion to strike his appearance, Mr. Howes filed a Motion to Withdraw Appearance of Defendant's Counsel. On September 6, 2011, the Court granted Mr. Howes' Motion and struck the appearance of Mark W. Howes and the Law Offices of Mark W. Howes, LLC as counsel for Mr. Cosgrove. A copy of the Order striking Mr. Howes' appearance was mailed to Respondent.

Following Mr. Howes' appearance being stricken, Respondent continued to prepare motions and pleadings on behalf of Mr. Cosgrove which Mr. Cosgrove then signed, *pro se.* On September 21, 2011, Mr. Cosgrove appeared at a contempt hearing regarding his failure to pay child support. Respondent appeared at the hearing, and although she did not sit at counsel table or otherwise identify herself as Mr. Cosgrove's attorney, she addressed the court and requested a postponement on Mr. Cosgrove's behalf. At the time of the show cause hearing, Respondent had not

filed a motion to withdraw as counsel for Mr. Cosgrove and was still his attorney of record.

### Bar Counsel Investigation of the Cosgrove Matter

By letter dated October 7, 2011, Respondent stated to Bar Counsel " ... because if the case was contested, I wanted no involvement and my boss would handle it. My boss, Mark Howes, began signing the pleadings from that point forward and agreed to be lead counsel on the case." The statement to Bar Counsel was false as Mr. Howes never agreed to be lead counsel on the case. By letter dated October 25, 2011, Bar Counsel requested Respondent provide information to substantiate her statement within ten (10) days. Additionally, Bar Counsel requested Respondent provide copies of all text messages between Respondent's phone and Ms. Cosgrove, copies of all email messages between Respondent and Ms. Cosgrove and copies of any other correspondence between Respondent and Ms. Cosgrove from April 23, 2010 through the date of the letter.

In a letter dated October 11, 2011, Respondent stated to Bar Counsel, "The parties both signed an order and it was faxed to Master Gilbert so the parties would not have to appear that day. I signed the consent order merely out of convenience because Mr. Howes was in Annapolis."

As of November 9, 2011, the requested information had not been received and Bar Counsel sent a follow-up letter requesting the information be provided within seven (7) days. On December 2, 2011, no response having been received to either the October 25 or November 9, 2011 letter, Bar Counsel again requested a response.

On November 16, 2011, Respondent appeared at the Attorney Grievance Commission and an interview was conducted by William Ramsey, Investigator for the Attorney Grievance Commission. Respondent stated to Mr. Ramsey that she signed the Consent Order on June 2, 2011 only because Mr. Howes was unavailable. Respondent did not inform Mr. Ramsey that, at the time she signed the Consent Order as Attorney for Mr. Cosgrove, she was no longer

employed by Mr. Howes. Mr. Howes had not planned to appear at the pendente lite hearing schedule for June 2, 2011 because he believed that his appearance had been struck. Similarly, Mr. Howes had no expectation that he would be consulted in the negotiation of the Consent Order following Respondent's termination in May 2011.

In a letter dated December 9, 2011, Respondent stated to Bar Counsel, "The parties both signed the order and it was faxed to Master Gilbert so the parties did not have to appear that day. I have signed the consent order merely out of convenience because Mr. Howes was in Annapolis. However, his appearance was still on record at that time. Mr. Howes' appearance was not struck until September 14, 2011."

## CONCLUSIONS OF LAW

In its Amended Petition for Disciplinary or Remedial Action, Petitioner alleged that Respondent violated the following Maryland Lawyers' Rules of Professional Conduct ("MRPC"): 1.7 (conflict of interest); 1.8 (conflict of interest); 1.16(a); 4.2 (communication with person represented by counsel); 8.1(a) and (b) (bar admission and disciplinary matters); 8.4(a), (c) and (d) (misconduct). For the reasons stated below, this Court finds, by clear and convincing evidence, that Respondent violated each of these rules.

### MRPC 1.7. Conflict of Interest: General Rule.

MRPC 1.7(a) provides:

"Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if: ... (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

The Court finds, by clear and convincing evidence, that Respondent violated MRPC 1.7(a) by representing Mr. Cos-

grove when she had a personal interest in the Cosgrove matter. Beginning in November 2010, when Respondent's relationship became intimate, Respondent had a personal interest in the matter. Beginning in January 2011, when Mr. Cosgrove moved in to Respondent's home, Respondent had a personal interest in the visitation and custody arrangement between the Cosgroves. Additionally, Respondent had a personal interest in the amount, if any, that Mr. Cosgrove would be required to pay in child support as discussed in reference to MRPC 1.8. The Court finds that Respondent knew that she had a conflict in the Cosgrove matter and that she may reasonably have been called as a witness on a variety of contested matters including child support, visitation and custody of the Cosgroves' minor children.

### Rule 1.8. Conflict of Interest: Current Clients: Specific Rules.

MRPC 1.8(i) provides:

"A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may: (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and (2) subject to Rule 1.5, contract with a client for a reasonable contingent fee in a civil case."

The Court finds, by clear and convincing evidence, that Respondent violated MRPC 1.8(i) by representing Mr. Cosgrove where she had a proprietary interest in the outcome of his matter. Respondent and Mr. Cosgrove shared all household expenses including payment of child support. Respondent had a proprietary interest in the amount of child support Mr. Cosgrove was required to pay.

### Rule 1.16. Declining or Terminating Representation.

MRPC Rule 1.16(a) provides:

"Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced,

shall withdraw from the representation of a client if: (1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law."

The Court finds, by clear and convincing evidence, that Respondent violated MRPC 1.16(a) when she failed to withdraw from the representation immediately following her romantic involvement with Mr. Cosgrove in November 2010.

## Rule 4.2. Communication with Person Represented by Counsel.

MRPC 4.2(a) provides:

"Except as provided in paragraph (c), in representing a client, a lawyer shall not communicate about the subject of the representation with a person who the lawyer knows is represented in the matter by another lawyer unless the lawyer has the consent of the other lawyer or is authorized by law or court order to do so."

The Court finds, by clear and convincing evidence, that Respondent violated MRPC 4.2(a), by having multiple communications with Ms. Cosgrove after March 18, 2011 when Ms. Cosgrove retained counsel. The Court finds that the substance of, at least some of, the communications was directly related to disputed issues in the Cosgrove matter. Specifically, Respondent had communications with Ms. Cosgrove related to visitation and custody of the Cosgroves' minor children and child support payments and obligations. Respondent never requested nor received permission from Mr. Nowak to discuss the Cosgrove matter directly with Ms. Cosgrove, nor was she authorized by law or court order to communicate directly with Ms. Cosgrove.

## Rule 8.1. Bar Admission and Disciplinary Matters.

MRPC 8.1 provides:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or (b) fail to

disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

The Court finds, by clear and convincing evidence, that Respondent violated MRPC 8.1 by making false statements to Bar Counsel regarding the circumstances surrounding the signing of the Consent Order on June 2, 2011. The Court finds that Respondent knowingly misled Bar Counsel to believe that the only reason she signed the Consent Order was Mr. Howes' unavailability. The Court finds the Respondent repeated this misrepresentation to Bar Counsel on three separate occasions, in her letters of October 11, 2011 and November 19, 2011 and in her interview with Mr. Ramsey on November 16, 2011. Additionally, the Court finds the Respondent made a false statement of material fact to Bar Counsel in her letter dated October 7, 2011 which stated that Mr. Howes was handling the Cosgrove matter.

The Court finds that Respondent violated MRPC 8.1(b) by failing to timely respond to Bar Counsel's requests for information.

### Rule 8.4. Misconduct.

MRPC 8.4(a) provides that it is professional misconduct for a lawyer to:

"[V]iolate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct."

The Court, having concluded that Respondent violated several of the Rules of Professional Conduct including MRPC 1.7, 1.8, 1.16, 4.2, and 8.1, concludes that Respondent has also committed misconduct in violation of Rule 8.4(a). *See Att'y Griev. Comm'n v. Foltz*, 411 Md. 359, 411, 983 A.2d 434, 465 (2009) (internal citations omitted).

MRPC 8.4(c) provides that it is professional misconduct for a lawyer to: "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The Court finds that Respondent's representations to Mr. Nowak regarding her role in the representation of Mr. Cosgrove were dishonest. The Court finds that Respondent acknowledged the conflict that existed in her representation of Mr. Cosgrove as early as her first communication with Mr. Nowak and purposefully misrepresented to Mr. Nowak that the conflict would be resolved by Mr. Howes' representation of Mr. Cosgrove. Additionally, the Court finds that Respondent's failure to disclose to Mr. Nowak that she was no longer employed by Mr. Howes at the time the Consent Order was executed was inherently deceitful.

The Court finds, that the same facts that support a conclusion that Respondent violated MRPC 8.1 support a conclusion that Respondent violated MRPC 8.4(c). The Court finds Respondent's misrepresentations to Bar Counsel during the course of its investigation were made in an attempt to deceive Bar Counsel.

MRPC 8.4(d) provides that it is professional misconduct for a lawyer to: "engage in conduct that is prejudicial to the administration of justice." The Court finds that the Respondent's conduct in the representation of Mr. Cosgrove as it relates to Mr. Howes, Mr. Nowak, Ms. Cosgrove and the Court, was prejudicial to the administration of justice in violation of MRPC 8.4(d).

## MITIGATION

Respondent has not met her burden to prove that there were mitigating factors or any affirmative defense.

## CONCLUSION

This Court finds that the facts elicited during the trial of this matter establish by clear and convincing evidence a violation of Rules 1.7; 1.8; 1.16(a); 4.2; 8.1(a) and (b);

8.4(a), (c) and (d) (misconduct). 8.4(a) through (d) as stated above.

▇▇▇ "This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. Chapman*, 430 Md. 238, 273, 60 A.3d 25, 46 (2013), quoting *Attorney Grievance v. Seltzer*, 424 Md. 94, 112, 34 A.3d 498, 509 (2011). "We accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance v. Rand*, 429 Md. 674, 712, 57 A.3d 976, 998 (2012), quoting *Attorney Grievance v. Stern*, 419 Md. 525, 556, 19 A.3d 904, 925 (2011). We conduct an independent, de novo review of the hearing judge's conclusions of law, pursuant to Rule 16–759(b)(1).[13]

Bar Counsel has filed no substantive exceptions to Judge Bailey's Findings of Fact and Conclusions of Law. O'Leary did file exceptions, in which she challenges the discovery sanctions imposed by Judge Bailey against her, several findings of fact, including the determination that she did not prove mitigation, and all of the conclusions of law.

O'Leary challenges the sanctions imposed by Judge Bailey for O'Leary's failure to respond to discovery requests and to appear at her deposition. She argues that given "the significance of the matter, namely [her] ability to practice law," O'Leary should have been permitted to fully participate in the evidentiary hearing, by introducing her own evidence and calling her own witnesses. O'Leary did, however, cross-examine every witness, testify as to mitigation and call Mr. Cosgrove as a witness in mitigation.

▇▇▇ We recognize that the hearing judge "is entrusted with the role of administering the discovery rules and, as such, is vested with broad discretion in imposing sanctions when a party fails to comply with the rules." *Attorney Grievance v.*

---

**13.** Rule 16–759(b) provides in pertinent part:

(b) **Review by Court of Appeals.** (1) Conclusions of Law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

*Kreamer,* 404 Md. 282, 342, 946 A.2d 500, 535 (2008). Utilizing this standard, we have chosen not to disturb sanctions for the failure to respond to discovery requests. In *Attorney Grievance v. James,* 385 Md. 637, 870 A.2d 229 (2005), an attorney filed late, unresponsive answers to Bar Counsel's interrogatories, request for admissions of facts and genuineness of documents, and request for production of documents. After Bar Counsel filed a motion for sanctions, which was granted by the Circuit Court Judge, the sanctions "foreclosed the Respondent from putting on any evidence that was requested in the Petitioner's Interrogatories and Requests for Production of Documents," and, "[a]s a result, Petitioner's Requests for Admission of Facts and Genuineness of Documents were admitted." 385 Md. at 647, 870 A.2d at 235. We approved the sanctions as "proportionate to the discovery abuse." *Id.* at 661, 870 A.2d at 243.

In another case involving sanctions, albeit not in the attorney grievance area, *Rodriguez v. Clarke,* 400 Md. 39, 926 A.2d 736 (2007), the plaintiffs failed to make available for deposition their expert witnesses, who were necessary to prove a prima facie case and we approved of the imposition of a sanction based upon the "continuous failure to cooperate with [the defendants'] repeated requests for dates of depositions of their experts, especially out-of-state witnesses." *Id.* at 68, 926 A.2d at 753. The Circuit Court granted the defendants' motion to preclude the plaintiffs from presenting expert testimony at trial and, thereafter, the defendant's motion for summary judgment, and we affirmed, concluding that the sanctions were warranted based upon the plaintiffs' failure to comply with discovery, which "evidenced a complete lack of good faith in providing access to the discoverable information." *Id.*

██ O'Leary repeatedly failed to respond to Bar Counsel's discovery requests, initially by not answering the interrogatories, request for production of documents, and request for admissions of fact and genuineness of documents. After an order of default was entered against her, O'Leary filed a motion to vacate the order of default, claiming that she was

not aware of the discovery deadlines and that she needed time to prepare her defense and collect documents. When the default order was vacated and the evidentiary hearing was rescheduled, O'Leary never responded to Bar Counsel's requests for documents, admissions of facts and genuineness of documents, and she failed to appear for her deposition. The sanctions imposed by Judge Bailey were certainly proportionate to O'Leary's failures to respond to discovery.

O'Leary now seeks to do that from which she has been prohibited by sanctions. Before us, she contends that she has evidence that is contradictory to her admissions or not in the record, which show that several of Judge Bailey's findings of fact are clearly erroneous. O'Leary, however, cannot avoid the sanctions imposed by the hearing judge by trying to do an "end run."[14] In *Attorney Grievance v. Powell,* 369 Md. 462, 800 A.2d 782 (2002), an attorney failed to respond to Bar Counsel's interrogatories, requests for admissions of fact and genuineness of documents, and request for production of documents. After Bar Counsel moved for sanctions, the circuit court judge entered an order directing that the

> Request for Admission of Facts and Genuineness of Documents be admitted, that the responsive pleading filed by Respondent be stricken, that Respondent be prohibited from introducing at trial any evidence to oppose the claims of [Bar Counsel] as set forth in the Petition for Disciplinary Action, and that judgment by default be entered against the Respondent and in favor of [Bar Counsel] finding that the Rules of Professional Conduct have been violated as alleged in the Petition for Disciplinary Action.

369 Md. at 466, 800 A.2d at 784. We concluded that the failure to file timely responses to the discovery requests, in order to "stonewall Bar Counsel's efforts to gain discovery," meant that we "consider this case on the present state of the

---

**14.** An "end run" is "a football play in which the ballcarrier attempts to run wide around the end of the line." Merriam–Webster's Collegiate Dictionary 412 (11th ed. 2005).

record and the findings of fact and conclusions of law of the hearing judge...." *Id.* at 473–74, 800 A.2d at 789.

Similarly, *Attorney Grievance v. McLaughlin*, 372 Md. 467, 813 A.2d 1145 (2002) involved an attorney who failed to respond to Bar Counsel's request for admissions of fact. After Bar Counsel asked for sanctions, the hearing judge ordered that the admissions of fact be deemed admitted, upon which he relied in rendering his Findings of Fact. Before us, the attorney sought a new evidentiary hearing to contradict the hearing judge's findings, specifically that the attorney had charged significant fees for work he had not done. We denied the attorney's request, concluding that the attorney had "exhausted his entitlement to further judicial proceedings." *Id.* at 494, 813 A.2d at 1161. The sanctions imposed were not an abuse of Judge Bailey's discretion, so before us, O'Leary cannot challenge the sufficiency of the evidence supporting the findings of fact by advocating for the consideration of evidence that is contradictory to her admissions or not in the record.

The sanctions did not prevent O'Leary from testifying as to mitigation and, thus, we may consider her exception to Judge Bailey's finding that she failed to prove, by a preponderance of the evidence, any mitigation. With respect to mitigating factors, we consider:

> Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance v. Brown*, 426 Md. 298, 326, 44 A.3d 344, 361 (2012). O'Leary contends that she suffered from insomnia, migraines and a miscarriage during the course of her representation of Mr. Cosgrove, without establishing any nex-

us to her misconduct. She also asserts that Judge Bailey should have considered her current decline in health, financial situation due to unemployment, anxiety problems and inability to secure independent counsel for the evidentiary hearing in September of 2012, as mitigation. While an illness or a traumatic event may serve as a mitigating factor in determining sanctions, they may do so only when there is some nexus to the misconduct. *Attorney Grievance v. Zimmerman,* 428 Md. 119, 146 n. 13, 50 A.3d 1205, 1221 n. 13 (2012), citing *Attorney Grievance v. West,* 378 Md. 395, 418, 836 A.2d 588, 601 (2003) and *Attorney Grievance Commission v. Breschi,* 340 Md. 590, 605, 667 A.2d 659, 666–67 (1995); *see also Attorney Grievance v. Vanderlinde,* 364 Md. 376, 414, 773 A.2d 463, 484–85 (2001).

■ O'Leary also excepts to the fact that Judge Bailey did not find that there was an absence of "testimony that Mr. Cosgrove, the actual client, was in anyway [sic] harmed." O'Leary obviously misconstrues her burden with respect to mitigation, in this regard. It was her burden to prove mitigation, rather than rely on a presumption that the absence of evidence should be construed in her favor. We overrule the exception.

■ "As to the conclusions of law of a judge, to whom we have assigned hearing duties in an attorney grievance case, our consideration is essentially *de novo,* even where default orders and judgments have been entered at the hearing level." *Attorney Grievance v. Harrington,* 367 Md. 36, 49, 785 A.2d 1260, 1267–68 (2001).

O'Leary excepts to the conclusion that she violated Rule 1.7(a)(2), which provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:

 \* \* \*

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's

responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Judge Bailey determined that O'Leary knew she had a conflict of interest in violation of Rule 1.7(a), because her intimate relationship with her client, Mr. Cosgrove, provided her with a personal interest in *Cosgrove v. Cosgrove* that materially limited her representation. Judge Bailey also determined that O'Leary "may reasonably have been called as a witness on a variety of contested matters including child support, visitation and custody of the Cosgroves' minor children."

In her exception, O'Leary does not dispute that she had a personal interest and familiarity with the Cosgrove matter. Rather, she asserts, without citation to any authority, that a conflict of interest under Rule 1.7(a)(2) cannot arise unless litigation ensues and the attorney, having a personal interest in the matter, is called also as a witness. Bar Counsel disagrees.

▮▮ A lawyer's intimate relationship with a client may constitute a violation of Rule 1.7. In *Attorney Grievance v. Culver*, 381 Md. 241, 849 A.2d 423 (2004), we considered whether nonconsensual sexual relations with a client, during the course of representation in "this domestic relations case, involving child custody, alimony, distribution of marital property, and divorce grounds," *id.* at 266 n. 11, 849 A.2d at 438 n. 11, constituted a personal conflict of interest under Rule 1.7(b), which provided:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

Culver was an attorney who engaged in sexual conduct with his client, while representing her in a divorce and child custody dispute. He acknowledged that the sexual conduct posed a personal conflict of interest but defended that his

sexual relations were consensual, and therefore the client acceded to his continued legal representation after their sexual relationship began.

We rejected Culver's argument regarding consent and went further in our discussion of Culver's violation of Rule 1.7(b). We concluded, for purposes of determining a violation of Rule 1.7(b), that consent was not dispositive as to the effect of an intimate relationship between an attorney and client, in the context of a disputed divorce and child custody action. 381 Md. at 266 n. 11, 849 A.2d at 438 n. 11. We found guidance in the commentary to Rule 1.7, which provided that a sexual relationship with a client is an "impermissible conflict between the interests of the client and those of the attorney" if the sexual relationship poses a material limitation on the representation and the attorney's belief otherwise is unreasonable:

> A sexual relationship with a client, whether or not in violation of criminal law, will create an impermissible conflict between the interests of the client and those of the lawyer if (1) the representation of the client would be materially limited by the sexual relationship and (2) it is unreasonable for the lawyer to believe otherwise. Under those circumstances, client consent after consultation is ineffective. See also Rule 8.4.

381 Md. at 269, 849 A.2d at 440. We relied on the fact that intimate relations with a client during the pendency of a divorce action may serve as grounds for adultery, under Section 7–103 of the Family Law Article, Maryland Code (1984, 1999 Repl.Vol., 2003 Supp.),[15] to enable the spouse to seek an immediate, absolute divorce, *id.* at 274, 849 A.2d at 443 ("When divorce is in issue, the lawyer who engages in sexual intercourse with the client may be supplying the client's spouse with grounds for an immediate divorce and may inter-

---

**15.** Section 7–103(a) of the Family Law Article, Maryland Code (1984, 1999 Repl.Vol., 2003 Supp.), provided:

(a) *Grounds for absolute divorce.*—The court may decree an absolute divorce on the following grounds:

(1) adultery;

fere with any possibility of a reconciliation."), and may be a factor for consideration in determining child custody. *Id.* at 274, 849 A.2d at 443 ("whereas the fact of adultery may be a relevant consideration in child custody awards, no presumption of unfitness on the part of the adulterous parent arises from it; rather it should be weighed, along with all other pertinent factors, only insofar as it affects the child's welfare," quoting *Robinson v. Robinson,* 328 Md. 507, 516, 615 A.2d 1190, 1194 (1992)). With these considerations, we concluded that "in a domestic relations matter, when the grounds for divorce, child custody, alimony, or the distribution of marital assets are at issue, the attorney knows or should know that a sexual relationship with the client has the potential to jeopardize the client's case. In such circumstances, an attorney who engages in sexual relations with the client violates Rule 1.7(b)." *Culver,* 381 Md. at 275, 849 A.2d at 443.[16]

Our analysis in *Culver* regarding whether a conflict of interest, now under Rule 1.7(a)(2),[17] exists in a divorce matter when the attorney had an intimate relationship with the client was not dependent on whether Culver was called as a witness. We overrule O'Leary's exception. O'Leary's conflict of interest, by engaging in sexual relations with Mr. Cosgrove during the course of his contested divorce action is evident from the record, including Mr. Nowak's testimony that O'Leary "had admitted to the relationship with Mr. Cosgrove, that she had gotten pregnant" and that she "stated that my client [Diana Cosgrove] had killed her unborn child." She violated Rule 1.7(a)(2).

O'Leary's conduct also violated Rule 1.8(i), which provides that "[a] lawyer shall not acquire a proprietary

---

**16.** Adultery remains a ground for absolute divorce, Section 7–103 of the Family Law Article, Maryland Code (1984, 2012 Repl.Vol.), and may be a factor for consideration in the determination of child custody.

**17.** Following *Culver,* Rule 1.7 was amended, by Rules Order dated February 8, 2005. Subsection (b), regarding conflicts of interest by material limitations in client representation, was moved to subsection (a)(2), without substantive change.

interest in the cause of action or subject matter of litigation the lawyer is conducting for a client...."[18] Judge Bailey found that O'Leary participated financially in paying the child support obligations of Mr. Cosgrove, while she negotiated the amount of child support that he was to pay Diana Cosgrove. Judge Bailey further found that O'Leary told Ms. Cosgrove that the amount of child support Ms. Cosgrove would be able to receive was related to payment of daycare services, stating to Ms. Cosgrove, while O'Leary was providing care, at times, for the Cosgrove children: "The reason you qualify for child support is the daycare you pay." O'Leary, thus, interjected her personal participation in caring for the children as a factor to advocate for a reduction of Ms. Cosgrove's child support, in which O'Leary had a financial interest.

 The prohibition against a lawyer acquiring a proprietary interest in his or her client's action is "designed to avoid giving the lawyer too great an interest in the representation," Comment 16 to Rule 1.8, because a lawyer's economic interest in the outcome of the client's case can erode the lawyer's independent judgment. *See Computer Dynamics, Inc. v. Merrill*, 252 B.R. 50, 64 (1997) (awarding a sanction, in favor of the debtor, where the creditor's attorney provided a hold harmless guaranty to his client, which constituted a prohibited conflict of interest, as a proprietary, financial interest in the outcome of his client's litigation, as well as "a simple example of why [the attorney] was totally incapable of exercising independent judgment in his oppressive desire to discredit, harass and embarrass [the opposing party]"); *see also Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. McCullough*, 468 N.W.2d 458, 461 n. 3 (Iowa 1991) (reiterating that a conflict of interest, by acquiring a proprietary interest in a client's litigation, is in consideration of the interest on "the attorney's independent judgment"); *In*

---

18. Two exceptions exist under Rule 1.8(i), in which a lawyer may acquire a proprietary interest: an attorney may "(1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and (2) subject to Rule 1.5, contract with a client for a reasonable contingent fee in a civil case." Neither exception is applicable in the present case.

*the Matter of Devine,* 128 A.D.2d 1024, 513 N.Y.S.2d 844, 845 (N.Y.App.Div.1987) (determining that an attorney, who was part-owner of his client's farm, obtained a proprietary interest in his client's civil action on behalf of the farm, because "he would benefit if the [clients] were successful" in litigation).

Clearly, O'Leary acquired a proprietary interest in the domestic relations controversy between the Cosgroves, in violation of Rule 1.8(i), when she paid child support and attempted to reduce its amount based on her personal involvement.[19] *See Attorney Grievance v. Harris,* 371 Md. 510, 538, 810 A.2d 457, 474 (2002) (concluding that an attorney's purchase of his client's home during a foreclosure sale, while representing the client in a bankruptcy action, constituted a proprietary interest, in violation of Rule 1.8(j),[20] because the bankruptcy action was brought "to forestall the foreclosure of [the client's] house").

■ Rule 1.16(a) provides that "a lawyer ... shall withdraw from the representation of a client if: (1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct. . . ." O'Leary's failure to withdraw from the representation after having started her intimate relationship with Mr. Cosgrove violated Rule 1.16(a).

■ Rule 4.2(a) provides that "in representing a client, a lawyer shall not communicate about the subject of the representation with a person who the lawyer knows is represented in the matter by another lawyer unless the lawyer has the consent of the other lawyer or is authorized by law or court

---

**19.** Unlike what the dissent asserts, the conclusion that O'Leary violated Rule 1.8(i) does not implicate violations in the situation in which a lawyer helps a relative in a legal matter. According to the findings of fact, O'Leary became Mr. Cosgrove's lawyer before they had any relationship, romantic or familial in any respect; she then developed a symbiotic financial relationship with Mr. Cosgrove, during which she misrepresented her legal role. No longstanding familial relationship, as posited by the dissent, is implicated.

**20.** By Rules Order dated February 8, 2005, subsection (j) of Rule 1.8, regarding conflicts of interest arising out of a proprietary interest in a client's litigation or cause of action, was moved to subsection (i).

order to do so." Judge Bailey found that O'Leary personally sent Ms. Cosgrove numerous text messages, to the point that Ms. Cosgrove obtained a temporary peace order; several of the messages concerned visitation and custody of the Cosgroves' children, as well as child support payments:

> "The reason you qualify for child support is the daycare you pay. Your attorney needs to explain this to you."

> "Call mr nowak asap he needs u to sign the consent order this afternoon."

> "Joe [Mr. Cosgrove] is filing for full custody and asking that u see kids every other weekend. Talk to ur lawyer ... no judge will give u every weekend off. And if u get full custody we will only have them every other weekend. So either way we won't have them every weekend."

At no time did O'Leary obtain, or seek to obtain, Mr. Nowak's permission when she sent these text messages to Ms. Cosgrove. These communications went to the very heart of the divorce case, and O'Leary's advocacy regarding child support, custody and visitation in her communication with Ms. Cosgrove, in the absence of Mr. Nowak, violated Rule 4.2(a). *See Attorney Grievance Commission v. Kent*, 337 Md. 361, 377, 653 A.2d 909, 918 (1995), quoting *In re McCaffrey*, 275 Or. 23, 549 P.2d 666, 668 (1976) (explaining that a purpose of the prohibition on contacting represented persons is to prevent "a person from being deprived of the advice of retained counsel by bypassing retained counsel").

 With respect to Rule 8.1(a), which prohibits a lawyer in connection with a disciplinary matter from "knowingly mak[ing] a false statement of material fact," Judge Bailey found that O'Leary knowingly made a false statement of material fact to Bar Counsel when she stated that Mr. Howes was Mr. Cosgrove's attorney. Judge Bailey further found that O'Leary misled Bar Counsel by stating that she signed the Consent Order because Mr. Howes was unavailable, in letters and during a meeting with Bar Counsel's investigator. O'Leary clearly violated Rule 8.1(a).

██ Rule 8.1(b) prohibits a lawyer in connection with a disciplinary matter from "knowingly fail[ing] to respond to a lawful demand for information from an admissions or disciplinary authority." On multiple occasions, O'Leary failed to respond to Bar Counsel's requests for information and documents during Bar Counsel's initial investigation. In October of 2011, Bar Counsel requested O'Leary provide, within ten days, copies of all text messages, email messages and further correspondence that she and Ms. Cosgrove exchanged between April of 2010 and October of 2011, as well as information to substantiate her statement that Mr. Howes was Mr. Cosgrove's attorney. O'Leary did not answer and, in November of 2011, Bar Counsel again requested that the information be provided in seven days, to which she did not respond. Her failure to timely respond to the October and November requests for information violated Rule 8.1(b). *See Attorney Grievance v. Brown,* 426 Md. 298, 323, 44 A.3d 344, 359 (2012).

Given O'Leary's multiple rule violations, she also violated Rule 8.4(a), which provides that it is professional misconduct for a lawyer to "violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct."

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Judge Bailey determined, and we agree, that O'Leary's lies about Mr. Howes's role in the representation of Mr. Cosgrove and her continued representation in spite of her personal conflicts, some of which inured to her financial benefit, were dishonest. In *Attorney Grievance v. Penn,* 431 Md. 320, 65 A.3d 125 (2013), we determined that Brien Michael Penn violated Rule 8.4(c) when he concealed from his employer, a title insurance company, his self-dealing. Penn, acting on behalf of the company, retained and paid himself, as outside counsel, to perform legal work for the company, as well as assigned the company's interest in security deeds to himself. To hide his conduct from his employer, Penn created as a guise a Delaware-incorporated law firm. This concealment, we concluded, constituted "intentional, dishonest conduct" and violated Rule 8.4(c).

O'Leary similarly created the ruse that Mr. Howes was Mr. Cosgrove's attorney, in order to shield her continued involvement in *Cosgrove v. Cosgrove* from scrutiny. Her dishonesty concerning Mr. Howes, to both Mr. Nowak as well as Bar Counsel, therefore, violated Rule 8.4(c). *See Attorney Grievance v. Harris,* 403 Md. 142, 164, 939 A.2d 732, 745 (2008) ("We have said that Rules 8.1(a) and 8.4(c) are violated when an attorney acts dishonestly and deceitfully by knowingly making false statements to Bar Counsel.").

Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." "[P]ublic confidence in the legal profession is a critical facet to the proper administration of justice and conduct that negatively impacts on the public's image or the perception of the courts or the legal profession violates Rule 8.4(d)." *Attorney Grievance v. Whitehead,* 405 Md. 240, 260, 950 A.2d 798, 810 (2008). O'Leary's unauthorized contact with Ms. Cosgrove regarding child support, child custody and other matters of the case without the consent of Ms. Cosgrove's attorney and O'Leary's repeated lies to both Mr. Nowak and Bar Counsel about Mr. Howes erode the public's confidence in the legal profession; we conclude that she violated Rule 8.4(d). *See also Attorney Grievance v. Nelson,* 425 Md. 344, 362–63, 40 A.3d 1039, 1049–50 (2012) (concluding that attorney violated Rule 8.4(d) by failing to respond to Bar Counsel's requests for information during the initial investigation). In summary, we conclude that Judge Bailey's findings of fact were supported by clear and convincing evidence and that O'Leary violated Rules 1.7(a)(2), 1.8(i), 1.16(a), 4.2(a), 8.1(a) and (b) and 8.4(a), (c), and (d).

We now turn to determining the appropriate sanction. Bar Counsel recommends disbarment. No mitigation was found.

We turn to Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions for guidance regarding the presence of aggravating circumstances:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Attorney Grievance v. Bleecker,* 414 Md. 147, 176–77, 994 A.2d 928, 945–46 (2010). Bar Counsel, in this case, argues that factors (b), (c), (d), (e), (f), (g), and (i) are implicated and support the ultimate sanction of disbarment.

 Under factor (b), O'Leary's selfish and dishonest motive is evidenced by her continuously negotiating the terms of Mr. Cosgrove's divorce with his spouse, without her attorney's consent, while engaging in an intimate, co-habitational, financial relationship with Mr. Cosgrove, as well as her lies to Mr. Howes, Mr. Nowak and Bar Counsel to shield her behavior.

With respect to factor (c), "[a]n attorney can engage in a pattern of misconduct by committing a number of acts in order to achieve a common goal." *Attorney Grievance v. Penn,* 431 Md. 320, 345, 65 A.3d 125, 140 (2013), citing *Attorney Grievance v. Coppola,* 419 Md. 370, 406, 19 A.3d 431, 452–53 (2011). Although O'Leary acknowledged to Mr. Nowak that her intimate relationship with her client constituted a conflict of interest, she continuously misrepresented that she would terminate her representation, all while communicating with Ms. Cosgrove regarding the terms of child support and custody, without Mr. Nowak's consent. She fabricated Mr. Howes's role in *Cosgrove v. Cosgrove* to Mr. Nowak and Bar Counsel. O'Leary committed multiple ethical violations to achieve the common goal of securing for Mr. Cosgrove, and herself in part, a favorable settlement. O'Leary's repeated

actions constituted a pattern of misconduct, under factor (c), as well as multiple offenses, under factor (d).

O'Leary's failure to respond to repeated requests for documents implicates factor (e), and her false statements to Bar Counsel clearly implicate factor (f). *Attorney Grievance v. Dominguez*, 427 Md. 308, 327, 47 A.3d 975, 985–86 (2012) ("Dominguez's false statement to Bar Counsel clearly implicates factor (f), and her failure to respond to subsequent, repeated requests for documents implicates factor (e)."); *Nelson*, 425 Md. at 364, 40 A.3d at 1050 ("Given Respondent's repeated failures to respond to Bar Counsel, aggravating factor (e) is applicable.").

As to factor (g), O'Leary has continued to refuse to acknowledge the wrongful nature of her conduct, citing instead "malicious lies told by Diana Cosgrove" as the cause for Bar Counsel's Petition.

With regard to factor (i), O'Leary has had experience in the practice of law, having been admitted for more than 8 years at the time she commenced representation of Mr. Cosgrove. *Attorney Grievance Commission v. Kent*, 337 Md. 361, 374, 653 A.2d 909, 915 (1995) (concluding that attorney's legal background was "significant," in part because he had been admitted to the Bar for six years).

This conduct, in the absence of any mitigation, warrants disbarment. *See Attorney Grievance v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001) ("[I]ntentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse.").

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FA-**

VOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GINA M. O'LEARY.

BELL, C.J., and ADKINS, J., concur and dissent.

ADKINS, J., Concurring In Part and Dissenting In Part.

There is no question that Maryland has taken a clear stance against a lawyer entering a sexual relationship with a client while representing that client in a matrimonial matter. *See Attorney Grievance Comm'n v. Culver,* 381 Md. 241, 274, 849 A.2d 423, 443 (2004). Thus, I agree with the Majority that Respondent should be disciplined for doing so, and join in most other respects with the Majority opinion. But, respectfully, I submit that the Majority is mistaken in accepting Bar Counsel's invitation to broaden the scope of Rule 1.8(i).

Rule 1.8(i) provides that a "lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client." The Majority finds this Rule applicable to O'Leary on grounds that she "participated financially in paying the child support obligations of Mr. Cosgrove, while she negotiated the amount of child support that he was to pay Diana Cosgrove." Maj. Op. at 36, 69 A.3d at 1141. I disagree that her action in representing Mr. Cosgrove, while living with him and sharing expenses, constituted a violation of Rule 1.8(i), and believe this holding has broad implications for practicing attorneys.

Both Maryland and the American Bar Association explain the history and purpose of Rule 1.8(i) as follows:

> Paragraph (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation.... **[This] general rule has its basis in common law champerty and maintenance and is designed to avoid giving the lawyer too great an interest in the representation.** In addition, when the lawyer acquires an ownership interest in the subject of the representation, it will be more difficult for a client to discharge the lawyer if the client so desires.

Maryland Lawyers' Rules of Professional Conduct 1.8 cmt. 16 (emphasis added); American Bar Association, *A Legislative History: The Development of the ABA Model Rules of Professional Conduct, 1982–2005,* 217 (2006) (emphasis added).[1]

The concept of champerty originated in medieval England. Its initial purpose was to stop unscrupulous nobles and royal officials from lending their names to bolster the credibility of doubtful and fraudulent claims in return for a share of the property recovered. *See Osprey, Inc. v. Cabana Ltd. P'ship,* 340 S.C. 367, 532 S.E.2d 269, 273 (2000); *see also* R.D. Cox, *Champerty as We Know It,* 13 Memphis State U.L.Rev. 139 (1983); Max Radin, *Maintenance by Champerty,* 24 Cal. L.Rev. 48 (1935); Percy H. Winfield, *The History of Maintenance and Champerty* 35 Law Q. Rev. 50 (1919). As times changed, the doctrine evolved away from lords and nobles, but retained its core focus on preventing strangers to litigation from obtaining a financial stake in a case. The legal ency-

---

**1.** This text also explains that

Sexual relationships that predate the client-lawyer relationship are not prohibited. Issues related to the exploitation of the fiduciary relationship and client dependence are diminished when the sexual relationship existed prior to the commencement of the client-lawyer relationship. However, before proceeding with the representation in these circumstances, the lawyer should consider whether the lawyer's ability to represent the client will be materially limited by the relationship. See Rule 1.7(a)(2).

American Bar Association, *A Legislative History: The Development of the ABA Model Rules of Professional Conduct, 1982–2005,* 218 (2006).

A Pennsylvania court, in describing the elements of champerty, explained:

In order to establish a prima facie case of champerty, three elements must exist. Those elements are: 1) the party involved must be one who has no legitimate interest in the suit; 2) the party must expend its own money in prosecuting the suit; and 3) the party must be entitled by the bargain to share in the proceeds of the suit. Additionally, '[t]he activity of champerty has long been considered repugnant to public policy against profiteering and speculating in litigation and grounds for denying the aid of the court.' Moreover, in *Clark,* we indicated that the doctrine of champerty continues to be viable in this Commonwealth and can be raised as a defense.

*Fleetwood Area Sch. Dist. v. Berks Cnty. Bd. of Assessment Appeals,* 821 A.2d 1268, 1272–73 (Pa.Commw.Ct.2003) (citations omitted).

clopedia Corpus Juris, for example, provides a helpful overview of the topic:

> At common law, champerty is defined to be a bargain by the terms of which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his or her own expense, or to aid in so doing, in consideration of receiving, in the event of success, some part of the land, property, or money recovered or deriving some benefit therefrom. Champerty is an officious intermeddling in a suit by a stranger, by maintaining or assisting either party with money or otherwise to prosecute or defend it, and dividing the proceeds obtained in the suit between the party and the stranger. Champerty also has been defined as a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds. An agreement is said to be "champertous" when a person without an interest in another's lawsuit undertakes to carry it on at his or her own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation.

14 C.J.S. Champerty and Maintenance § 1 (2006) (footnotes omitted). This text goes on to explain the limits of the doctrine:

> It is necessary that the interference in the litigation is clearly officious and for the purpose of stirring up strife and continuing litigation. Officious intermeddling, as a necessary element of champerty, is offering unnecessary and unwanted advice or services or being meddlesome in a highhanded or overbearing way.

> A contract which contains an undertaking to defray the expenses of litigation for consideration other than proceeds of the litigation is not champerty.

> The prohibition against champerty is designed to cure malicious "stirring up" of litigation that would not otherwise have occurred. The activity of champerty is repugnant to public policy against profiteering and speculating in litiga-

tion and is grounds for denying the aid of the court. Nevertheless, the doctrine of champerty is strictly limited. *Id.* (footnotes omitted). In the same vein, a Pennsylvania court explained: "The activity of champerty has long been considered repugnant to **public policy against profiteering and speculating in litigation** and grounds for denying the aid of the court." *Clark v. Cambria Cnty. Bd. of Assessment Appeals,* 747 A.2d 1242, 1245–46 (Pa.Commw.Ct.2000) (emphasis added).[2]

Clearly, then, the notions underlying champerty and maintenance focus on the person's acquisition of a specific interest in the litigation at hand. The history talks of "stirring up litigation" and "speculating in litigation." It is this type of speculation, then, where a lawyer obtains a financial interest in a case for the clear purpose of making money, that violates Rule 1.8(i).

In this regard, defending a child-support claim by a client's estranged spouse cannot fairly be described as "instigating" or "speculating" in litigation. The informal sharing of income and expenses between a romantic couple in the payment of child support is not equivalent to champerty because the living arrangement is not focused on, or motivated by, the litigation. Instead, the arrangement has different and broader general purposes relating to everyday life and how a couple decides to pay for their expenses. To the extent, therefore, that O'Leary

---

**2.** A federal court also had occasion to consider the ancient doctrine in 2001:

> As *champerty* is no longer part of the *argot* of lawyers and courts in this country as it once was, it is well to recall that it is defined as a "bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." *Black's Law Dictionary* 231 (6th ed. 1990) (citations omitted). *See also, e.g., Ames v. Hillside Coal & Iron Co.,* 314 Pa. 267, 171 A. 610, 612 (1934). As *Black's* points out, *champerty* is a form of *maintenance, Black's Law Dictionary* at 231, which is in turn defined as an "officious intermeddling in a lawsuit by a non-party by maintaining, supporting or assisting either party, with money or otherwise, to prosecute or defend the litigation." *Id.* at 954 (citation omitted).

*In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706, 716 (E.D.Pa.2001).

"acquired an interest" in Mr. Cosgrove's defense of his spouse's child support claim, it was only incidental to their mutual pursuit of an intimate living arrangement. It certainly was not an attempt by O'Leary to instigate or speculate in dubious litigation.

To hold otherwise, as the Majority does, has broad implications for routine conduct that lawyers regularly engage in on behalf of family members and romantic partners. For example, if a lawyer's ailing father were to move in with him, and share income and expenses during some litigation against the father's health insurance company, which the lawyer was handling, he would "acquire an interest" in the litigation, presumably in violation of Rule 1.8(i). The same would be true if a lawyer were representing her brother in litigation, and she and her brother began living together, sharing expenses (including those of litigation) and income. A lawyer who was handling litigation for an adult child could also run afoul of Rule 1.8(i) if the child moved in with the lawyer, sharing expenses, during the litigation. Even without living with the client, if a lawyer were to be representing her father's company in litigation, and during that litigation, her father gave one-third of the company's stock to her, under the Majority opinion, she would be violating Rule 1.8 if she continued the representation because she "acquire[d] a proprietary interest in the cause of action or subject matter of litigation[.]" In my view, there is no reason for this Court to be disciplining a lawyer for innocuous conduct of this type, that is, I submit, not uncommon among ethical private practitioners.

To justify its holding, the Majority cites, as significant, the fact that,

> O'Leary told Ms. Cosgrove that the amount of child support Ms. Cosgrove would be able to receive was related to payment of daycare services, stating to Ms. Cosgrove, while O'Leary was providing care, at times, for the Cosgrove children: "The reason you qualify for child support is the daycare you pay." O'Leary, thus, interjected her personal participation in caring for the children as a factor to advo-

cate for a reduction of Ms. Cosgrove's child support, in which O'Leary had a financial interest.

Maj. Op. at 36, 69 A.3d at 1141. I wholeheartedly agree that Respondent should not have spoken to Ms. Cosgrove about the litigation because the latter was represented by opposing counsel, and Rule 4.2(a) prohibits such communication. *See* Rule 4.2(a) (set forth in Majority Opinion at FN 6).[3] Yet, the statement Respondent made does not invoke Rule 1.8(i) nor does it justify the Majority's comparison to the lawyer's conduct in *Computer Dynamics, Inc. v. Merrill,* 252 B.R. 50 (E.D.Va.1997). In the latter case, the lawyer gave his client a hold harmless guarantee against liability for a pleading submitted by the lawyer, Merrill, in which he alleged, in a bankruptcy Chapter 11 proceeding, that the debtor-in-possession had

> committed acts of corporate malfeasance which demonstrate that he had been "ransacking" the company and, *inter alia,* paid lavish personal expenses while refusing to pay employee withholding taxes and employee health insurance premiums. Merrill based those allegations on information imparted by former employees, who at trial did not support the allegations made of gross mismanagement by Starer.

*Id.* at 59. The bankruptcy court concluded that the lawyer had "assumed a personal interest in the litigation beyond the realm of propriety and lost all objectivity in the pursuit of the Motion and the Amended Motion." *Id.*

O'Leary's statement that payment of daycare expenses could affect Ms. Cosgrove's entitlement to child support, in comparison, may well have been accurate, and was certainly not slanderous, or inflammatory, like Merrill's statements. In truth, amounts paid for daycare **are** a factor in determining the amount of child support. *See* Md.Code (1999, 2006 Repl. Vol.), § 12–204(g)(1) of the Family Law Article ("[A]ctual child care expenses incurred on behalf of a child due to employment or job search of either parent shall be added to the basic

---

3. Her texts to Ms. Cosgrove were also sanctionable conduct.

obligation and shall be divided between the parents. . . ."); *see also Lacy v. Arvin,* 140 Md.App. 412, 431–33, 780 A.2d 1180, 1191–92 (2001).

Nor is O'Leary's conduct comparable to that in *Attorney Grievance Commission v. Harris,* 371 Md. 510, 810 A.2d 457 (2002), also cited by the majority. The respondent's conduct in *Harris,* purchasing a client's home during a foreclosure sale while representing him in a bankruptcy action, was directly adverse to the client's interests in that the lawyer assumed control and ownership of the client's home. Nothing similar occurred here.

In sum, I agree with the Majority's decision with respect to the violations except its holding that Respondent violated Rule 1.8(i), a holding that has broad implications for practicing lawyers. For her violations of the charged rules other than Rule 1.8(i), I would impose an indefinite suspension.

Chief Judge BELL has authorized me to state he joins in this Opinion.